[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
Facts
The plaintiffs, the Robert R. Waitts Irrevocable Trust and its trustees, Margaret Waitts, George Waitts and James Waitts, commenced this action against the defendants, American General Life Insurance Company ("American General"), Christopher Fountas ("Fountas") and Norman Warner ("Warner"), for damages allegedly sustained as the result of the failure of the insurance company to pay a claimed benefit in the amount of $1,160,000.
The complaint alleges that the plaintiffs applied to American General for a life insurance policy covering the life of Robert Waitts. The defendant Warner was American General's general managing agent at that time and the defendant Fountas was the insurance agent who assisted the plaintiffs in the procuring of the subject policy. The policy applied for requested, as an additional benefit, a return of premium rider. When the policy was issued on December 20, 1995, however, it did not include the rider. The defendants Warner and Fountas allegedly represented that the rider would be added to the policy, both before and after the issuance of the policy.
Robert Waitts died on May 17, 1998. In July of 1998, the defendant insurance company notified the plaintiffs that it would not pay the return of premium benefit. The complaint, filed December 28, 1999, alleges breach of contract, promissory estoppel, violations of the Connecticut Unfair Trade Practices Act, intentional misrepresentations and negligent misrepresentations.
By motion dated April 30, 2001, Fountas moves to dismiss all of the counts directed against him, i.e., counts eight, nine, ten and eleven of the second amended complaint dated July 26, 2000, and the cross claims CT Page 7434 filed against him by the co-defendant American General.[1] Fountas claims this court lacks jurisdiction over him because his actions do not constitute the "transaction of business" under section 52-59b (a)(1) of the Connecticut General Statutes[2] nor do they satisfy the minimum contacts required under the due process clause of the fourteenth amendment to the Constitution. International Shoe Co. v. Washington,326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
Discussion
"Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . ." (Internal quotation marks omitted.) Doe v. Roe,246 Conn. 652, 661, 717 A.2d 706 (1998). "In ruling upon whether a complaint survives a motion to dismiss a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Pamela B. v. Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . Where, however . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Citations omitted; internal quotation marks omitted.) Barde v. Board of Trustees,207 Conn. 59, 62, 539 A.2d 1000 (1988).
"If a challenge to the court's personal jurisdiction is raised by a defendant, either by a foreign corporation or by a nonresident individual, the plaintiff must bear the burden of proving the court's jurisdiction. . . . Because an evidentiary hearing was not requested in this case by either party, [the court] will accept . . . all undisputed
factual allegations for the purpose of determining whether the plaintiffs have sustained their burden of proving that the court had personal jurisdiction over [the defendant] under the long arm statutes." (Emphasis added.) Knipple v. Viking Communications, Ltd., 236 Conn. 602, 607-609,674 A.2d 426 (1996).
A challenge to this court's jurisdiction over the person of the defendant Fountas was properly raised by way of a motion to dismiss.Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 53-54, 459 A.2d 503
(1983). In evaluating such a claim, the trial court undertakes a two-part inquiry. "The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over CT Page 7435 the [defendant] would violate constitutional principles of due process." (Citations omitted; internal quotation marks omitted.) Knipple, supra, 606.
The plaintiffs claim that this court has jurisdiction over the defendant pursuant to section 52-59b (a)(1) of the General Statutes. Under this provision of Connecticut's long-arm statute, a court may exercise personal jurisdiction over any nonresident individual who "transacts any business within the state." "The General Statutes do not define what the phrase `transacts any business' means in the context of Sec. 52-59b. We note, however, that in enacting Sec. 52-59b, the legislature used New York Civil Practice Law Sec. 302 (McKinney 1980-81 Sup.) as a model. (Citations omitted.) We therefore find pertinent the judicial interpretation given to that New York statute. (Citations omitted.) In accord with that interpretation, we construe the term `transacts any business' to embrace a single purposeful transaction." (Citations omitted.) Zartolas v. Nisenfeld, 184 Conn. 471, 474, 440 A.2d 179
(1981).
New York case law is helpful to this court's analysis of whether the actions of the defendant Fountas constitute the transaction of business within the state of Connecticut. In Parke-Bernet Galleries, Inc. v.Franklyn, 26 N.Y.2d 13, 256 N.E.2d 506, 508 (1970), the Court of Appeals noted that "[i]t is important to emphasize that one need not be physically present in order to be subject to the jurisdiction of our courts under CPLR 302 for, particularly in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State." Further, "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." (Citations omitted; internal quotation marks omitted.) Black River Associates v. Newman,637 N.Y.S.2d 880, 884 (A.D. 4 Dept. 1996). "A single transaction would be sufficient to fulfill this requirement . . . so long as the relevant cause of action also arises from that transaction." (Citations omitted; internal quotation marks omitted.) Bank Brussels v. Fiddler Gonzalez Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999).
The District Court in the Southern District of New York, applying New York law, interpreted this provision of New York's long-arm statute as follows: "The `transacting business' test under CPLR Section 302(a)(1) requires not regular and systematic activities but rather the purposeful availment of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws. (Citations omitted.) Thus, Section 302(a)(1) requires only a minimal quantity of activity, CT Page 7436 provided that it is of the right nature and quality. (Citations omitted.) . . . Furthermore, in determining whether defendant's contacts are of the appropriate nature, the court must examine the totality of the circumstances." (Citations omitted.) Palace Exploration Co. v. PetroleumDevelopment Co., 41 F. Sup.2d 427, 432 (S.D.N.Y. 1998).
In the present case, the following facts are either undisputed or uncontradicted. The decedent, Robert Waitts, was a resident of New Jersey. The plaintiff trustees are residents of New Jersey. The defendant Warner is a resident of New Jersey. The defendant insurance company is a Texas corporation with its principal place of business located in Houston, Texas. The defendant Fountas, at all relevant times, was a resident of New Jersey and was employed by Braishfield Associates, Inc., a New Jersey corporation with an office in Clifton, New Jersey.
The subject life insurance policy is a Connecticut contract. The policy was deliberately procured in Connecticut because Connecticut was one of only a few states in which a return of premium rider desired by the insured was available. Fountas had direct contact with Robert Waitts and the trustees. To assist the plaintiffs in determining whether or not to purchase the subject policy, Fountas contributed information which outlined the parameters relating to the performance of the policy. This document, entitled "A Life Insurance Illustration of Projected Values and Benefits for Use in Connecticut" specifically states that it was "Designed For: Robert Waitts By: Chris Fountas." The application for the Connecticut policy was filled out by Fountas. The application indicates it was signed in New Haven, Connecticut on December 6, 1995. On December 8, 1995, Fountas filled out an application for a Connecticut insurance license for Nicholas Lordi and forwarded it to Mr. Lordi for his signature. His assistance was given to make it possible for Mr. Lordi to share in the commissions paid in connection with the sale of the subject policy.
Subsequent to the issuance of the policy, Fountas filled out an application for an amendment or endorsement to the policy. This document was signed by Fountas and indicates it was signed in Stamford, Connecticut on April 3, 1997. After the death of Robert Waitts in May of 1998, Fountas filed a complaint against American General with the New Jersey Insurance Department when the company refused to pay the disputed sum. New Jersey recommended that the complaint be refiled in Connecticut because the subject policy is a Connecticut contract. Fountas did so and communicated verbally and in writing with Karen Smigel, a principal examiner at the Consumer Affairs Division of the State of Connecticut Insurance Department.
Certain facts remain unclear or disputed. In paragraph 19 of the CT Page 7437 affidavit by Fountas attached to his motion to dismiss, which affidavit was signed April 30, 2001, he stated under oath that he "was licensed to transact limited insurance business in the State of Connecticut when the subject policy was procured and issued, [although] the subject life insurance policy was not procured under my license." In his response to American General's interrogatories, Fountas indicated on January 2, 2002, that he "held an Insurance Producer License in the State of Connecticut from October 2, 1996 to January 30, 1998." Now Fountas claims he has never been licensed to sell insurance for American General or its subsidiaries in the state of Connecticut. Despite the inconsistencies, it certainly appears that Fountas believed he held a Connecticut insurance license at the time the subject policy was sold.
Further, it is unclear who communicated the information to American General that Robert Waitts would be starting a business in Connecticut so as to satisfy the requirements for the issuance of the subject policy in Connecticut. Warner, in his affidavit dated March 27, 2002, claims Fountas conveyed this information to him and to American General.
In determining whether the actions of Fountas qualify as the transaction of business under Connecticut's long-arm statute, the court considers only the undisputed facts and the activities which occurred prior to the issuance of the policy on December 20, 1995. The actions of Fountas subsequent to that date, although perhaps indicative of his perception of his connection with Connecticut, are "not sufficient to support the exercise of jurisdiction, see Connecticut Artcraft Corp.,574 F. Supp. at 630, as the present suit cannot be said to have arisen from them." Greene v. Sha-Na-Na, 637 F. Sup. 591, 596 (D. Conn. 1986).
From a review of the undisputed facts and an examination of the totality of the circumstances, the court concludes Fountas transacted business within the state of Connecticut. The life insurance policy at issue is a Connecticut product. Connecticut was one of only a few states that would issue a return of premium rider, and Fountas directed his efforts toward Connecticut for that reason. This was not a random selection; he purposefully availed himself of a benefit available under Connecticut law. He filled out the application for the subject policy, compiled information to be used in illustrations demonstrating the performance of the life insurance policy for Robert Waitts and assisted Mr. Lordi, a certified public accountant who helped Fountas in getting this business from the plaintiffs, in applying for his own Connecticut insurance license in order to share in the commissions from the sale of this policy.
Having ruled that personal jurisdiction attaches under state law, the court must now determine whether the exercise of jurisdiction under these CT Page 7438 circumstances violates the constitutional principles of due process. "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. The foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (Citations omitted; internal quotation marks omitted.) United States Trust Co. v. Bohart, 197 Conn. 34,41, 495 A.2d 1034 (1985). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235,253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
Fountas had to reach into Connecticut to obtain a Connecticut life insurance policy that provided the coverage sought by his clients. His actions were purposeful, meaningful and instrumental in procuring the policy which is now the subject of this lawsuit. It was foreseeable that the state of Connecticut would become involved should disputes arise over the policy's contractual provisions. Indeed, even though Fountas did not file his initial complaint with the Connecticut Insurance Department, it is not surprising that New Jersey recommended that he refile his complaint in Connecticut because the policy is a Connecticut policy. Fountas did so and had several communications with Ms. Smigel of the Connecticut Insurance Department. The court concludes that exercising personal jurisdiction over Fountas does not violate his due process rights. His actions were such that he should have reasonable anticipated that he would be "haled" into a Connecticut court. The foreseeability and fairness touchstones of due process have been met.
Conclusion
For the foregoing reasons, the motion to dismiss of the defendant Christopher Fountas is denied.
BY THE COURT
McLachlan, J.