## MICHAEL A. KNIPPLE ET AL. *v.* VIKING COMMUNICATIONS, LTD., ET AL.
### (15189)

Peters, C. J., and Callahan, Berdon, Norcott and Katz, Js.

Argued November 29, 1995—officially released April 16, 1996

*Paul Ruszczyk*, for the appellants (plaintiffs).

*Philip M. Block*, for the appellees (defendants).

BERDON, J. This is an appeal from a judgment of dismissal for lack of personal jurisdiction over a foreign corporation and a nonresident individual. The issue presented is whether the plaintiffs have satisfied the requirements of our long arm statutes.

In April, 1994, the plaintiffs, Michael and Stephanie Knipple, filed a five count complaint against the defendants, Viking Communications, Ltd. (Viking), and James McClelland, a sales director for Viking.[1] Both Viking,

---

[1] Against Viking, the plaintiffs alleged common law claims of breach of contract and fraud, in addition to violations of the Connecticut Business Opportunity Investment Act; General Statutes § 36b-60 et seq.; and the Connecticut Unfair Trade Practices Act. General Statutes § 42-110a et seq. The plaintiffs also alleged that McClelland violated both of those acts.

a foreign corporation, and McClelland, a nonresident individual, were constructively served with process.[2] Thereafter, the defendants appeared and filed a motion to dismiss pursuant to Practice Book §§ 142 and 143 for lack of personal jurisdiction, forum non conveniens and insufficient service of process.[3] The plaintiffs then, pursuant to § 143, filed a memorandum in opposition to the motion to dismiss accompanied by an affidavit by Michael Knipple. Subsequently, the defendants filed an affidavit by William Harris, a manager at Viking, in support of their motion.[4] Although some of the facts pertaining to jurisdiction were disputed, neither party requested an evidentiary hearing. At short calendar, the trial court heard argument on the motion to dismiss, and on October 31, 1994, granted the motion on the basis of the plaintiffs' failure to prove the applicability of our state long arm statutes. We reverse the trial

---

[2] Although the record fails to indicate the state of its incorporation, Viking is neither incorporated in nor registered to do business in Connecticut. Rather, it has its principal place of business in Illinois. It is also undisputed that McClelland is a nonresident of Connecticut.

[3] Practice Book § 142 provides in pertinent part: "Any defendant wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance."

Practice Book § 143 provides in pertinent part: "The motion to dismiss shall be used to assert . . . (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process. This motion shall always be filed with a supporting memorandum of law, and, where appropriate, with supporting affidavits as to facts not apparent on the record.

"If an adverse party objects to this motion he shall, at least five days before the motion is to be considered on the short calendar, file and serve in accordance with Sec. 120 a memorandum of law and, where appropriate, supporting affidavits as to facts not apparent on the record."

Practice Book § 144 provides in pertinent part: "Any claim of lack of jurisdiction over the person or improper venue or insufficiency of process or insufficiency of service of process is waived if not raised by a motion to dismiss . . . ."

[4] We note that the defendants failed to file Harris' affidavit with their motion to dismiss as provided for in § 143. Rather, they submitted the affidavit more than one month later, after the plaintiffs' memorandum in opposition was filed.

court's judgment dismissing the action as to Viking, but affirm the judgment as to McClelland.

In their complaint, the plaintiffs alleged the following facts. In January, 1993, the plaintiffs received in their mail at home in Waterbury, Connecticut, a package of postcards soliciting inquiries for various products and services.[5] Among the cards was one soliciting inquiries concerning vending machines, pay telephones and other business opportunities. The plaintiffs completed and returned that card. Within a few days, the plaintiffs began receiving postal and telephonic communications from representatives of Viking. The various representatives of Viking offered the plaintiffs an opportunity to purchase a "turn-key" business consisting of private pay telephones and promised that Viking would provide location and installation assistance. These communications were received either at the plaintiffs' home or at Michael Knipple's place of business in Danbury, Connecticut. In reliance on Viking's representations, the plaintiffs invested in Viking's private pay telephones by signing, on February 1, 1993, at their home, a document entitled "Purchase Agreement." The agreement was then sent to Viking's office in Illinois where it was countersigned by McClelland. Under the terms of the agreement, the plaintiffs consented to pay Viking $16,350 for the purchase of private pay telephones. The following year the plaintiffs brought suit alleging that "Viking [had] failed and refused to provide the promised services."

"Because a lack of personal jurisdiction may be waived by the defendant, the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss." *Standard Tallow Corp.* v. *Jowdy*, 190 Conn.

---

[5] In their affidavit, the defendants denied that they advertised by way of "card paks." Accordingly, we do not consider the plaintiffs' allegations regarding this matter in determining whether Connecticut's long arm statutes were satisfied.

48, 53–54, 459 A.2d 503 (1983). When a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court must first "decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process."[6] *Frazer* v. *McGowan,* 198 Conn. 243, 246, 502 A.2d 905 (1986); see *Thomason* v. *Chemical Bank,* 234 Conn. 281, 286, 661 A.2d 595 (1995); *Lombard Bros., Inc.* v. *General Asset Management Co.,* 190 Conn. 245, 250, 460 A.2d 481 (1983). In this case, the trial court went no further than the first inquiry; it found that the plaintiffs had failed to prove that the requirements of Connecticut's long arm statutes—General Statutes § 33-411[7] with respect to foreign

---

[6] "The federal due process clause permits state courts to exercise in personam jurisdiction over a nonresident corporate [or individual] defendant that has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. . . . A state court will have specific jurisdiction over a nonresident defendant whenever the defendant has purposefully directed [its] activities at residents of the forum . . . and the litigation [has] result[ed] from alleged injuries that arise out of or relate to those activities . . . . Alternatively, [e]ven when the cause of action does not arise out of or relate to the foreign corporation's [or individual's] activities in the forum State, due process is not offended by a State's subjecting the corporation [or individual] to its in personam jurisdiction if the defendant has had continuous and systematic general business contacts with the state." (Citations omitted; internal quotation marks omitted.) *Thomason* v. *Chemical Bank,* 234 Conn. 281, 287–88, 661 A.2d 595 (1995).

[7] General Statutes § 33-411 provides in pertinent part: "(b) Every foreign corporation which transacts business in this state in violation of section 33-395 or 33-396 shall be subject to suit in this state upon any cause of action arising out of such business.

"(c) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) out of any contract made in this state or to be performed in this state;

corporations and General Statutes § 52-59b[8] with respect to nonresident individuals—had been satisfied.

If a challenge to the court's personal jurisdiction is raised by a defendant, either by a foreign corporation or by a nonresident individual, the plaintiff must bear the burden of proving the court's jurisdiction.[9] *Standard*

---

or (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; or (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance. . . ."

[8] General Statutes § 52-59b (a) provides: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership, or his or its executor or administrator, who in person or through an agent: (1) Transacts any business within the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state."

[9] This general rule is different with respect to determining whether the court has jurisdiction over a defendant that is served personally or through abode service. In those situations, as opposed to situations where service is constructive, i.e., service on a foreign corporation or nonresident individual by mail, the defendant bears the burden of disproving personal jurisdiction. " 'The general rule putting the burden of proof on the defendant as to jurisdictional issues raised is based on the presumption of the truth of the matters stated in the officer's return. When jurisdiction is based on personal or abode service, the matters stated in the return, if true, confer jurisdiction. When jurisdiction is based on constructive service, jurisdiction cannot arise solely from the acts recited in the [officer's] return. . . . ' 1 Stephenson, Conn. Civ. Proc. (2d Ed.) § 96, p. 390." *Standard Tallow Corp.* v. *Jowdy,* supra, 190 Conn. 53.

*Tallow Corp.* v. *Jowdy*, supra, 190 Conn. 54. Under our current rules of procedure, a motion to dismiss "may perform the role of either a motion to erase or a plea in abatement under our former practice." *Pellegrino* v. *O'Neill*, 193 Conn. 670, 672 n.4, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S. Ct. 236, 83 L. Ed. 2d 176 (1984). A motion to erase admitted "all facts which [were] well pleaded, invoke[d] the existing record and [was required to] be decided upon that alone." *Barde* v. *Board of Trustees*, 207 Conn. 59, 62, 539 A.2d 1000 (1988); 1 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970) § 103. The plea in abatement was the required pleading when an alleged jurisdictional defect could not be determined on the record. *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 587–88, 409 A.2d 1029 (1979); 1 E. Stephenson, supra, § 103. Under a plea in abatement, once issues of fact were joined, the trial court was required to conduct an evidentiary hearing to determine the disputed facts necessary to decide the jurisdictional issue. 1 E. Stephenson, supra, § 108 (d).

In view of the dual roles of a motion to dismiss—that is, as a motion to erase and as a plea in abatement—this court has previously considered the undisputed factual allegations in the complaint as well as the undisputed factual allegations in the various affidavits when adjudicating the motion where no evidentiary hearing has been held.[10] *Barde* v. *Board of Trustees*, supra, 207 Conn. 61–62. Because an evidentiary hearing was not requested in this case by either party, we will accept, as the trial court should, all undisputed factual allegations for the purpose of determining whether the plain-

---

[10] Where the facts necessary to determine jurisdiction are disputed, "due process requires that a trial-like hearing be held, [at the request of either party] in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." *Standard Tallow Corp.* v. *Jowdy*, supra, 190 Conn. 56. Furthermore, the trial court must allow a reasonable continuance for discovery when it determines that discovery is warranted. Id., 60.

tiffs have sustained their burden of proving that the court had personal jurisdiction over either or both of the defendants under the long arm statutes.

## I

### JURISDICTION OVER A FOREIGN CORPORATION

The plaintiffs argue that the trial court had several bases for finding that the long arm statutes were satisfied with respect to Viking.[11] Because we conclude that the plaintiffs have proven that the court had jurisdiction over Viking under § 33-411 (c) (4), we do not address the other statutory jurisdictional provisions invoked by the plaintiffs.

Pursuant to § 33-411 (c) (4), a foreign corporation is subject to suit in Connecticut if the cause of action in question arises "out of tortious conduct [committed] in this state, whether arising out of repeated activity or single acts . . . ." The plaintiffs alleged that the tortious conduct committed by Viking in Connecticut included intentional misrepresentations and fraudulent nondisclosures.

The uncontroverted allegations in the complaint and the affidavits with respect to Viking's tortious conduct are as follows: After the plaintiffs indicated an interest in learning about Viking's business opportunities, they received numerous out-of-state communications from agents of Viking. According to these allegations, Viking not only offered to sell private pay telephones to the plaintiffs, but also promised to provide training, to assist in finding locations for installation, and to install the telephones. The promotional material sent by Viking to

---

[11] The plaintiffs assert that § 33-411 (c) (1), (2) and (4) of the general long arm statute; see footnote 7; and General Statutes §§ 36b-62 (c) and 36b-74 (c) of the Connecticut Business Opportunity Investment Act; see footnote 1; are satisfied, each of which independently provides the court with long arm jurisdiction over Viking. Because we conclude that § 33-411 (c) (4) has been satisfied, we need not address these other statutory provisions.

the plaintiffs, which was attached to their affidavit, supports the plaintiffs' allegations. One promotional item, entitled "Viking Advantages," promised in regard to training: "Full training and factory and back-up support to insure your total success at all levels of the industry." In regard to locations, the same item promised: "High traffic locations, with long term contracts. All your locations will be with your approval." Additionally, a letter from Jan Kraft, an agent of Viking, states: "You will be hearing from our route coordinator to help you with your route development."

In their complaint, the plaintiffs alleged that Viking had failed to provide the training and location selection services promised and that none of the telephones had been installed. The plaintiffs also alleged that they had relied on Viking's representations about the services that Viking would provide and that these representations were false, and were known to have been false, when made.

In response, Viking, in the affidavit of Harris, merely stated: "As a matter of business *practice*, we do not provide location or installation services. However, if requested, we can provide a list of people in the industry who do provide such services." (Emphasis added.) Accordingly, Viking never denied that its agents had made such fraudulent promises to the plaintiffs, but merely denied that it was its practice to provide the services allegedly promised.[12]

False representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut under § 33-411 (c) (4). *Coan* v. *Bell Atlantic Systems Leasing International, Inc.*, 813 F. Sup. 929, 944–45 (D. Conn. 1990); *David* v. *Weitzman*, 677 F. Sup. 95, 98 (D. Conn. 1987); *Teleco Oilfield Services, Inc.* v.

---

[12] If this allegation had been disputed, it would have been appropriate for the plaintiffs to request an evidentiary hearing to resolve the dispute. See footnote 10.

*Skandia Ins. Co.*, 656 F. Sup. 753, 758 (D. Conn. 1987); *McFaddin* v. *National Executive Search, Inc.*, 354 F. Sup. 1166, 1171 (D. Conn. 1973). For example, in *Teleco Oilfield Services, Inc.* v. *Skandia Ins. Co.*, supra, 756, the plaintiff brought an action alleging breach of an insurance contract and bad faith tortious acts arising from the failure to pay the plaintiff's claim by its insurers, which were several foreign corporations. The United States District Court for the District of Connecticut held, inter alia, that the defendant insurers' tortious conduct was deemed to have occurred in Connecticut, thereby providing the court with jurisdiction over the defendants under § 33-411 (c) (4), because "the alleged misrepresentations of coverage, both active and passive, would have been made by way of communications sent to and received by [the plaintiff] from the [out-of-state] defendants in Connecticut." Id., 758. Similarly, in the present case, based on the plaintiffs' undisputed allegations of misrepresentation by way of telephonic and postal communications sent to and received in Connecticut, Viking engaged in tortious conduct in this state, thereby satisfying § 33-411 (c) (4). We, therefore, hold that the trial court improperly concluded that § 33-411 (c) (4) was not satisfied.

Consequently, the plaintiffs established, pursuant to § 33-411 (c) (4), that Connecticut's long arm statute was satisfied as to Viking. The case must, therefore, be remanded to the trial court for further proceedings to determine whether Viking had sufficient contacts with Connecticut so as to comport with due process and to resolve the other grounds for dismissal alleged in the defendants' motion, i.e., forum non conveniens and insufficient service of process.

## II

### JURISDICTION OVER A NONRESIDENT INDIVIDUAL

The plaintiffs argue that, pursuant to § 52-59b (a) (3) (B), the trial court had jurisdiction over McClelland

because he had committed "a tortious act *outside the state* causing injury to person or property within the state . . . ."[13] (Emphasis added.) Jurisdiction under subsection (a) (3) (B) has the additional requirement that the plaintiff prove that the individual defendant "expects or should reasonably expect the act to have consequences in the state *and* derives substantial revenue from interstate or international commerce."[14] (Emphasis added.)

Even if we assume that McClelland is an agent vicariously liable for the tortious conduct of Viking,[15] the complaint and affidavits are devoid of any allegations from which it could be determined that McClelland derived substantial revenue from interstate or international commerce. Therefore, the plaintiffs have failed to establish that the court had personal jurisdiction over McClelland.

The judgment of dismissal with respect to Viking is reversed and the case is remanded for further proceedings consistent with this opinion; the judgment of dismissal with respect to McClelland is affirmed.

In this opinion the other justices concurred.

---

[13] Although the plaintiffs alleged that Viking committed a tortious act *within the state,* the plaintiffs rely solely on their assertion that McClelland committed a tortious act *outside the state* for jurisdiction over McClelland.

[14] See footnote 8.

[15] The plaintiffs seek to hold McClelland individually liable as an agent of Viking for its alleged tortious violation of the Connecticut Business Opportunity Investment Act. General Statutes § 36b-61 (4) ("[s]eller means a person who is engaged in the business of selling or offering for sale business opportunities or any agent or representative of such person").