## SANDRA JEAN HERSEY *v.* LONRHO, INC.
### (AC 22297)

Lavery, C. J, and West and Peters, Js.

Argued June 6—officially released October 15, 2002

*James V. Sabatini*, for the appellant (plaintiff).

*Timothy S. Jajliardo*, with whom, on the brief, was *Peter J. Ponziani*, for the appellee (defendant).

*Opinion*

WEST, J. The plaintiff, Sandra Jean Hersey, appeals from the judgment of the trial court dismissing her complaint for lack of personal jurisdiction over the defendant, Lonrho, Inc. On appeal, the plaintiff claims that the court improperly failed (1) to conclude that it had jurisdiction over the defendant on the basis of the actions of its subsidiaries and (2) to pierce the corporate veil.

The following facts are relevant to our resolution of the plaintiff's appeal. In April, 1997, the plaintiff, through a certified travel agent, booked a trip for the Bahamas Princess Resort and Casino (resort) on Grand Bahama Island in the Bahamas. While registered as a guest at the hotel, the plaintiff was walking from the pool area to her hotel room when she fell into a hole containing hot or steaming water. As a result of that fall, which she attributes to the defective and dangerous condition of the grounds surrounding the pool area, the plaintiff claims to have suffered physical injury, including second degree burns, and mental anguish and economic losses, including incurred medical expenses, lost time from work and impaired future earnings. On April 15, 1998, the plaintiff filed an action against the defendant, alleging that those injuries and economic losses were proximately caused by the defendant's negligence.

The court found that the resort is owned by two Bahamian corporations, Sunrise Properties, Ltd. (Sun-

rise), and Princess Casinos, Ltd. The resort was marketed and promoted in Connecticut by Princess Vacations, Inc., Sunrise, Princess Casino, Ltd., and Princess Vacations, Inc., are corporations separate from the defendant, which is a holding company incorporated in Delaware. At the relevant time, the defendant was the parent corporation of Princess Hotels, International, which was in turn the parent corporation of Princess Vacations, Inc.

On July 14, 1998, the defendant filed a motion to dismiss the complaint pursuant to Practice Book § 10-30 on the ground that the court lacked personal jurisdiction over the defendant as required by General Statutes § 33-929. The court denied without prejudice that motion to dismiss, stating that the information provided by the parties in their respective affidavits and exhibits was insufficient to determine whether the requirements of § 33-929 and of due process had been met. To answer the necessary questions of fact, the court concluded that an evidentiary hearing was required. At the conclusion of that hearing, the court granted the defendant's renewed motion to dismiss.

We first address whether, as a matter of law, the court improperly failed to find that it had personal jurisdiction over the defendant on the basis of the in-state activities of its subsidiary corporation.

"Our standard of review of a trial court's findings of fact and conclusions of law in connection with a motion to dismiss is well settled. A finding of fact will not be disturbed unless it is clearly erroneous. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts . . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [granting] of the motion to dismiss will be de novo." (Internal quotation marks

omitted.) *Henriquez* v. *Allegre*, 68 Conn. App. 238, 242, 789 A.2d 1142 (2002).

Practice Book § 10-30 requires a defendant to challenge personal jurisdiction by filing a motion to dismiss. See *Knipple* v. *Viking Communications, Ltd.*, 236 Conn. 602, 605, 674 A.2d 426 (1996). "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 544, 590 A.2d 914 (1991).

A motion to dismiss challenging the court's jurisdiction requires a two part inquiry. "The trial court must first decide whether the applicable long arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) *Knipple* v. *Viking Communications, Ltd.*, supra, 236 Conn. 606.

General Statutes § 33-929 (f) provides in relevant part that "[e]very foreign corporation shall be subject to suit in this state, by a resident of this state . . . whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising . . . (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state . . . ."

The plaintiff claims that the requirements of § 33-929 (f) (2) are satisfied because Princess Vacations, Inc., repeatedly has solicited business in Connecticut on

behalf of the resort. The plaintiff cites newspaper advertising distributed in Connecticut, the delivery and distribution of brochures to Connecticut travel agencies and the maintenance of an Internet web site. The plaintiff argues that those activities of a subsidiary corporation are sufficient to establish the requisite personal jurisdiction over the defendant as the parent corporate entity.[1]

It is undisputed that Princess Vacations, Inc., repeatedly solicited business in Connecticut. It also is undisputed that Princess Vacations, Inc., is the wholly owned subsidiary of Princess Hotels, International, and that Princess Hotels, International, in turn, is the wholly owned subsidiary of the defendant. Whether those facts are sufficient to support jurisdiction over the defendant in the present case, however, requires us to examine the vitality of the rule enunciated in *Cannon Manufacturing Co.* v. *Cudahy*, 267 U.S. 333, 45 S. Ct. 250, 69 L. Ed. 634 (1925), that the use of a subsidiary to transact business is not sufficient to subject a nonresident parent corporation to the jurisdiction of the forum in which that business is transacted.

The plaintiff argues that the rule established by the Supreme Court in *Cannon* has been overruled by *International Shoe Co.* v. *Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), and its progeny. In support of that argument, the plaintiff refers to *Brunswick Corp.* v. *Suzuki Motor Co., Ltd.*, 575 F. Sup. 1412 (E.D. Wis. 1983). In *Brunswick Corp.*, the plaintiff obtained extraterritorial service of process on two parent corporations in Japan. In that case, the plaintiff contended that the "substantial, continuous, and systematic" activities of their wholly owned subsidiaries within Wisconsin were sufficient to establish that the foreign parents were

---

[1] Actually, the defendant is the corporate parent once removed. As previously stated, Princess Vacations, Inc., is the wholly owned subsidiary of Princess Hotels, International, which in turn is the wholly owned subsidiary of the defendant.

" 'doing business' " in the state, pursuant to the requirements of that state's long arm statute. Id., 1416. The United States District Court for the Eastern District of Wisconsin was called on to decide whether the " 'doing business' " and due process requirements for jurisdiction over the Japanese parent corporations were satisfied simply by reference to the in-state activities of their wholly owned subsidiaries. Id., 1417.

The court concluded that such jurisdiction was proper. The *Brunswick Corp.* court explained that *"Cannon* was decided twenty years before *International Shoe* and in a context in which extraterritorial service of process on a nonresident corporation was statutorily unauthorized and constitutionally restricted by the old territorial due process notion that a state might exercise jurisdiction only over those persons present in the forum. Because the parent corporation in *Cannon* had not entered the forum but rather had elected to have a separate subsidiary do business there, the only way for the plaintiff to obtain service was to establish, on traditional corporate law principles, those facts that would permit a Court to pierce the corporate veil, find the subsidiary to be the alter ego of its parent, and treat the two corporations as a single entity. Since 1925, notions of due process and personal jurisdiction have evolved considerably. . . . Except in very limited circumstances, *Cannon*'s use of alter ego theories for jurisdictional purposes has become an anachronism." (Citation omitted.) Id., 1418.

We do not find *Brunswick Corp.* persuasive. "[I]t is a fundamental principle of corporate law that the parent corporation and its subsidiary are treated as separate and distinct legal persons even though the parent owns all the shares in the subsidiary and the two enterprises have identical directors and officers. Such control, after all, is no more than a normal consequence of controlling share ownership." (Internal quotation marks omitted.)

*SFA Folio Collections, Inc.* v. *Bannon,* 217 Conn. 220, 232, 585 A.2d 666, cert. denied, 501 U.S. 1223, 111 S. Ct. 2839, 115 L. Ed. 2d 1008 (1991). "This court has indicated that the [*Cannon*] rule remains viable, that inter-corporate adherence to the forms of separation will be respected even when the management personnel are the same if the identical sets of officers and directors operate in theoretically distinct capacities for each entity and the admittedly fine distinction between control by the same individuals and 'actual corporate control' is supported by the evidence." (Internal quotation marks omitted.) *McPheron* v. *Penn Central Transportation Co.,* 390 F. Sup. 943, 954–55 (D. Conn. 1975).

We are not alone in rejecting the holding in *Brunswick Corp.* that the proper jurisdictional analysis permits consideration of a nonresident's contacts with the forum state through its wholly owned subsidiaries regardless of whether there has been adherence to corporate formalities. *Brunswick Corp.* has been rejected by its sister court in the western district of Wisconsin. See *Insolia* v. *Philip Morris, Inc.,* 31 F. Sup. 2d 660, 671 (W.D. Wis. 1998). Further, *Brunswick Corp.*'s holding that the *Cannon* presumption of corporate separateness is no longer appropriate goes against the weight of federal case law on the subject. The prevailing view appears to be that the mere incidence of "stock ownership in or affiliation with a corporation, without more, is not a sufficient minimum contact [to satisfy due process requirement and justify the exercise of personal jurisdiction over a nonresident parent corporation]." *Central States, Southeast & Southwest Areas Pension Fund* v. *Reimer Express World Corp.,* 230 F.3d 934, 943 (7th Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1406, 149 L. Ed. 2d 348 (2001), citing *Miller* v. *Honda Motor Co., Ltd.,* 779 F.2d 769, 771–72 (1st Cir. 1985); *Dean* v. *Motel 6 Operating L.P.,* 134 F.3d 1269, 1273–74 (6th Cir. 1998); *Transure, Inc.* v. *Marsh & McLennan, Inc.,*

766 F.2d 1297, 1299 (9th Cir. 1985); see also *Shaffer* v. *Heitner*, 433 U.S. 186, 216, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977) (ownership of shares in corporation located in forum is not purposeful availment of that forum). Thus, even with respect to inquiries under the *International Shoe Co.* standard, the fundamental principle of respect for the separateness of corporate identity appears to retain its validity for jurisdictional purposes.

Recently, the United States Court of Appeals for the Seventh Circuit reaffirmed the principle that mere stock ownership in a subsidiary corporation is not sufficient to establish jurisdiction over a nonresident parent corporation. "[W]here corporate formalities are substantially observed and the parent does not dominate the subsidiary, a parent and a subsidiary are two separate entities and the acts of one cannot be attributed to the other. The Supreme Court, in a discussion of whether jurisdiction over the subsidiary can be leveraged into jurisdiction over the parent, has stated that [e]ach defendant's contacts with the forum State must be assessed individually. [*Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)]. The unilateral activity of an entity cannot subject a nonresident defendant to personal jurisdiction in the entity's forum. . . . Where two corporations are in fact separate, permitting the activities of the subsidiary to be used as a basis for personal jurisdiction over the parent violates this principle and thus due process. . . . [T]he primary purpose of the corporate form is to prevent a company's owners, whether they are persons or other corporations, from being liable for the activities of the company. Where corporate formalities have been observed, a company's owners reasonably expect that they cannot be held liable for the faults of the company. Thus, such owners do not reasonably anticipate being [haled] into a foreign forum to defend against liability for the errors of the corporation." (Citations omitted;

internal quotation marks omitted.) *Central States, Southeast & Southwest Areas Pension Fund* v. *Reimer Express World Corp.*, supra, 230 F.3d 944.

Having declined the plaintiff's invitation to depart from the *Cannon* rule, we next consider whether the court improperly granted the defendant's motion to dismiss on the ground that the court did not pierce the corporate veil. "[B]efore [a long arm] statute can be utilized as a basis for the exercise of jurisdiction over the [nonresident] foreign corporation, the corporate veil must be pierced so that acts of the domestic subsidiary can be imputed to the absent parent." *McPheron* v. *Penn Central Transportation Co.*, supra, 390 F. Sup. 949. Whether to pierce the corporate veil constitutes a factual inquiry, and we will not reverse the trial court's findings of fact unless they are clearly erroneous. *Davenport* v. *Quinn*, 53 Conn. App. 282, 302, 730 A.2d 1184 (1999).

"Our Supreme Court discussed the concept of piercing the corporate veil in *Zaist* v. *Olson*, 154 Conn. 563, 573–74, 227 A.2d 552 (1967). Courts will disregard the fiction of separate legal entity when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock. . . . Under such circumstances the general rule, which recognizes the individuality of corporate entities and the independent character of each in respect to their corporate transactions, and the obligations incurred by each in the course of such transactions, will be disregarded, where, as here, the interests of justice and righteous dealing so demand. . . . The circumstance that control is exercised merely through dominating stock ownership, of course, is not enough. . . . There must be such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal." (Internal quotation marks

omitted.) *Davenport* v. *Quinn*, supra, 53 Conn. App. 299–300.

"When determining whether piercing the corporate veil is proper, our Supreme Court has endorsed two tests: the instrumentality test and the identity test. The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. . . .

"The identity rule has been stated as follows: If a plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise. . . . The concept of piercing the corporate veil is equitable in nature and courts should pierce the corporate veil only under exceptional circumstances." (Citation omitted; internal quotation marks omitted.) Id., 300–301.

We note that the plaintiff has failed to raise any allegations that would support a court's piercing the corporate veil in the instant case. She has not alleged that the defendant exercises control over or dominates its subsidiary companies. Indeed, at the trial level and on

appeal, the plaintiff's argument with respect to the propriety of exercising jurisdiction over the defendant focused solely on the incidence of corporate ownership. "When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction." *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 54, 459 A.2d 503 (1983).

There was no evidence adduced at trial that would support the conclusion that the corporate entities actually doing business within the state did so as agents of the defendant or that those companies were mere alter egos of the defendant. The court found that the defendant is a Delaware corporation that has never been authorized to do business in Connecticut and that it has never done business in the state under its own name or under any other name. The court also found that the defendant's sole purpose was to act as a holding company for subsidiary corporations. The defendant had no employees, nor did it provide any services to any of its subsidiary companies. The court found that other companies, not the defendant, owned, controlled, managed or operated the resort. Although the defendant and its subsidiary companies have overlapping boards of directors, that alone is insufficient to establish the parent's domination or control of the subsidiary beyond that which normally is associated with the incidence of corporate ownership. Even "100% stock ownership and commonality of [officers and directors] are not alone sufficient to establish an alter ego relationship between two corporations." (Internal quotation marks omitted.) *Insolia* v. *Philip Morris, Inc.*, supra, 31 F. Sup. 2d 669, quoting *Hargrave* v. *Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). The court further found that there had been adherence to the corporate formalities between the defendant and its subsidiaries.

The plaintiff did not produce any evidence that calls into question any of the court's findings. We conclude that the court's factual findings are not clearly erroneous and that on the basis of those findings, the court properly declined to pierce the corporate veil and assert jurisdiction over the defendant.[2]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] The plaintiff additionally warns of the consequences of allowing a parent corporation to escape liability for the actions of its subsidiaries. The corporate form is designed to insulate sharcholders from liability beyond the amount of their investment in the company. Absent factual findings that would allow the court to pierce the corporate veil, we see no reason to vitiate the benefits of limited liability incidental to the corporate form. See *Insolia* v. *Philip Morris, Inc.*, supra, 31 F. Sup. 2d 670. In the present case, the plaintiff has not even alleged, much less proven, that any of the subsidiaries are undercapitalized, have not kept the proper records or are mere alter egos of the parent holding company. In the absence of such findings, we cannot conclude that the corporate structure was designed for any fraudulent or improper purpose.