ANDREA BUCCHERE *v.* BRINKER INTERNATIONAL, INC., ET AL.

Superior Court, Complex Litigation Docket at Waterbury
File No. X01-CV-04-4000238S

Memorandum filed November 15, 2005

*Hayber & Pantuso, LLC, Madsen & Prestley & Parenteau, LLC,* and *Consumer Law Group, LLC,* for the plaintiffs.

*Jackson Lewis, LLP,* for the named defendant et al.

SHEEDY, J. Four plaintiffs[1] bring the present action on behalf of themselves and others similarly situated against the defendants, Brinker International, Inc. (Brinker International), and Brinker International Payroll Company, L.P. (Payroll). All were employed by Brinker International "and/or" by Payroll (as stated in paragraph one of their complaint) at Chili's Grill & Bar, On The Border or Romano's Macaroni Grill, restaurant chains, all of which are owned by Brinker International, a Delaware corporation headquartered in Dallas, Texas. Essentially, the plaintiffs' complaint alleges that their employers improperly took a "tip credit" of 29.3 percent

---

[1] Andrea Bucchere, Tara-Ann Teetman, Ty Bladek and Nicole Miller are now the plaintiffs. When the present motion was filed, the governing complaint was that of March 22, 2004, when Bucchere was the only plaintiff. That complaint consisted of two counts, one in which Bucchere claimed violations of the Connecticut Minimum Wage Act, General Statutes § 31-58 et seq., on her behalf and the second in which she claimed the same violations on behalf of all others similarly situated.

of the state minimum wage toward payment of their total wages and, in this and in other ways, violated General Statutes § 31-58 et seq., the Connecticut Minimum Wage Act (act).

Brinker International has moved to dismiss on the ground that the court lacks personal jurisdiction. It asserts that it is a foreign corporation that does not transact business within the state and does not otherwise have sufficient minimum contacts with the state to satisfy the requirements for personal jurisdiction. The plaintiffs have objected to the same for reasons to be discussed. The parties have submitted memoranda of law with attached exhibits and waived oral argument, consenting to adjudication on the papers.

## I

### APPLICABLE LAW

"A motion to dismiss shall be used to assert lack of jurisdiction over the subject matter, 'essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court.'" *Kizis* v. *Morse Diesel International, Inc.*, 260 Conn. 46, 51, 794 A.2d 498 (2002). It admits all facts well pleaded, invokes the existing record and must be decided on that alone. *Shay* v. *Rossi*, 253 Conn. 134, 139–40, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003). If, however, "the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Internal quotation marks omitted.) Id., 140. In ruling on a motion to dismiss, "a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 410–11, 722

A.2d 271 (1999). The motion "is not designed to test the legal sufficiency of the complaint in terms of whether it states a cause of action." *Pratt* v. *Old Saybrook*, 225 Conn. 177, 185, 621 A.2d 1322 (1993). The motion "should not be granted on other than jurisdictional grounds." *Egril* v. *Foisie*, 83 Conn. App. 243, 248, 848 A.2d 1266, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004). When, as here, there is a motion to dismiss for lack of personal jurisdiction and there is raised "a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction." *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 54, 459 A.2d 503 (1983).

## II

### APPLICATION OF LAW TO FACTS

A motion to dismiss requires a two part inquiry. "The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements are met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) *Knipple* v. *Viking Communications, Ltd.*, 236 Conn. 602, 606, 674 A.2d 426 (1996).

Brinker International's claim is that it cannot be liable to the plaintiffs because first, they were employed by Payroll at Chili's Grill & Bar in Glastonbury. Second, Payroll is an indirect, wholly owned subsidiary of Brinker Restaurant Corporation, another Delaware corporation. Third, and finally, Brinker Restaurant Corporation is a wholly owned subsidiary of Brinker International. In an affidavit submitted into evidence and containing testimony of the defendants' witness, Jay Tobin, he avers that Brinker International owns no

restaurants in this state, employs nobody here and does not otherwise transact business in any manner in this state. Brinker International relies on *Hersey* v. *Lonrho, Inc.*, 73 Conn. App. 78, 807 A.2d 1009 (2002). *Hersey* concluded that the rule enunciated in *Cannon Mfg. Co.* v. *Cudahy Packing Co.*, 267 U.S. 333, 45 S. Ct. 250, 69 L. Ed. 634 (1925), was still vital, specifically, that the use of a subsidiary (here, Payroll) to transact business is not sufficient to subject a nonresident parent corporation (here, Brinker International) to the jurisdiction of the forum in which that business is transacted. The parties do not dispute that the corporate form of these companies is as described previously and replicates the corporate form of the parties in *Hersey*.

The plaintiffs argue that the distinction lies between the parties here and those in *Hersey*. Specifically, the plaintiffs correctly state that in *Hersey*, as in *Cannon Mfg. Co.*, the plaintiff's argument was that there was jurisdiction over the parent corporation on the basis of the in-state activities of the subsidiary and, therefore, it was necessary to pierce the corporate veil to support a finding of jurisdiction over the parent. Brinker International overlooks that because the plaintiffs here claim that its in-state activities subject it to this court's jurisdiction, there is no need to pierce the corporate veil, and neither *Hersey* nor *Cannon Mfg. Co.* command the dismissal of the plaintiffs' claims against Brinker International. *Hersey* approvingly cited *Central States, Southeast & Southwest Areas Pension Fund* v. *Reimer Express World Corp.*, 230 F.3d 934 (7th Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1406, 149 L. Ed. 2d 348 (2001), for the principle that mere stock ownership is insufficient to support jurisdiction over the parent. *Hersey* v. *Lonhro, Inc.*, supra, 73 Conn. App. 85. *Central States, Southeast & Southwest Areas Pension Fund*, supra, 944, cited *Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984), and stated: "[W]here corporate formalities are

substantially observed and the parent does not dominate the subsidiary, a parent and a subsidiary are two separate entities and the acts of one cannot be attributed to the other. The Supreme Court, in a discussion of whether jurisdiction over the subsidiary can be leveraged into jurisdiction over the parent, has stated that '[e]ach defendant's contacts with the forum State must be assessed individually.' " This court's initial inquiry, therefore, is whether Brinker International engaged in activities within this state so as to confer jurisdiction.

The plaintiffs contend that there is jurisdiction over Brinker International because it both contracted with the plaintiffs here and because it engaged in tortious conduct in this state by virtue of its tip credit policy, which violated the act. This state's long arm statute, General Statutes § 33-929, provides that a foreign corporation is subject to suit here under subsection (f) (1) on any cause of action arising "[o]ut of any contract made in this state or to be performed in this state" or under subsection (f) (4), "out of tortious conduct in this state, whether arising out of repeated activity or single acts . . . ."

What is not disputed is that the plaintiffs were given employment packets that they claim constituted contracts. Brinker International argues that these packets were not contracts because first, nowhere in them does the word "contract" or "agreement" appear. Second, they contain neither reciprocal promises nor the terms and conditions of the plaintiffs' employment. The first argument is rejected; there is no authority in this state for the proposition that there can be no contractual relationship between parties without the ritualistic characterization of the same within the four corners of the document, nor, so far as this court is aware, does any other state (including Delaware) require that talismanic language. Neither does this court accept the argument that there are no reciprocal promises contained in the

documents provided to the plaintiffs. In deciding a motion to dismiss, the court must accept as true the factual allegations of the complaint and all facts necessarily implied by those factual allegations. *Lawrence Brunoli, Inc.* v. *Branford*, supra, 247 Conn. 410–11. The complaint provides that the plaintiffs were "employed." Two exhibits to the opposing memorandum of law contain pages signed by the plaintiffs. Those pages reference "employee orientation," "salary," "equal employment opportunity policy," "employees," "benefits" and the like. These terms are incident to employment, and "salary" is ordinarily the consideration flowing to a person for employment services. This court does not decide here whether these exhibits constitute legally enforceable written agreements, nor is it necessary for the court to determine this to adjudicate the present motion. *Standard Tallow Corp.* v. *Jowdy*, supra, 190 Conn. 54, however, concludes that when a motion to dismiss raises a factual question not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence that establishes jurisdiction. The plaintiffs have sufficiently rebutted the assertions of Tobin's affidavit to defeat the present motion.

Although Tobin asserts in his affidavit that Brinker International has no employees in this state, there are indicia of an employment relationship between Bucchere and Brinker International. Bucchere has submitted copies of four paychecks to her issued in 2002. These checks identify "Brinker International" as the payer. Brinker International provides numerous copies of her paychecks in the years 2002 and 2003 that show the payer as "Brinker Intl. Payroll Co. L.P." Tobin explains this change in language as mere "clarification." Yet, when asked at his deposition what he would conclude if a person's paychecks identified a company *other than* Brinker International Payroll Company, L.P.,

as the payer, he testified that it was "most likely" an indication that an entity other than Payroll was that person's employer.[2] Additionally, Tobin testified at his deposition that he did not know whether the "Release and Waiver of Liability" sections of the exhibits to the plaintiff's memorandum of law (which were signed by her and which the defendants have said they view as orientation information) was a "contract" but that he did consider it an "obligation." Neither did he know whether the agreement to arbitrate (also part of the aforementioned exhibits) was a "contract" between the parties. The fluidity of Brinker International's position underscores the numerous factual questions regarding the existence of a binding contract, and this court cannot conclude the parties' intent from the submissions.

Separate from the question of whether the aforementioned exhibits constitute legally enforceable written agreements is the plaintiffs' contention that Brinker International transacted business in this state and engaged in tortious conduct here. A fortiori, if it sent paychecks to the plaintiffs here, it transacted business here. Distinct from that, however, § 33-929 (f) (4) provides that Brinker International may be liable to the plaintiffs whether it transacted business here and whether there was a contract made or to be performed here if it committed a tort here. The two central issues raised by the plaintiffs' complaint are first, whether the tip credit policy conformed with the act in this state pertaining to the minimum wage. Second, whether Brinker International properly segregated "service" and "nonservice" tasks of employees such as Bucchere so as properly to determine against what portion of the

---

[2] Curiously, Tobin also testified that he spent no time looking for a document to establish that Bucchere was at any time an employee of Payroll. That is surprising in view of her claim that she worked for Brinker International and the consistent position of the defendants that she worked for Payroll.

plaintiffs' earnings the tip credit should be applied. Brinker International's position that no exhibits offered by the plaintiffs connect any of its personnel policies to the day-to-day operations of the Chili's Grill & Bar in Glastonbury or to the issues in the present complaint ignores the following two considerations.

The first relevant exhibit[3] to the plaintiffs' memorandum of law to be considered is a memo on "tip credit" from Theresa McCaslin, who identifies herself therein as being part of "corporate affairs" at Brinker International. The memo was sent by e-mail as an explanation of the requirements to qualify for a tip credit. It references the need to ensure compliance by Brinker International with federal law but also notes the need to comply with state law and further states that "a separate state-by-state analysis will be performed at a later date." That memo, which also alludes to continued work "on the 'Tip Credit' project," leaves little doubt that Brinker International created the tip credit policy that governed the plaintiffs' restaurant. McCaslin, however, testified that she was never assigned any responsibility with regard to any specific state and did not even know Connecticut had a law regarding the tip credit rule. In fact, McCaslin, who took direction from Leslie Denny, Brinker International's director of corporate affairs, understood that she had no responsibility with regard to the tip credit law in Connecticut (despite the reference in the memo to the preparation of a "state-by-state" analysis) and was never told that there was, in fact, such a law in Connecticut. Thus, she made no effort to learn about Connecticut law, having been told that the project was limited to federal law. Finally, she

---

[3] Two other subsequent exhibits of the plaintiffs are duplicates of the memo from Theresa McCaslin of Brinker International but are directed to the employers of the other plaintiffs in the present action who were added in subsequent complaints and to which the same allegations are directed.

was never provided, either by Denny or anyone else, with critical memos on tip credits in general or the Connecticut tip credit law specifically.

The second relevant exhibit to the plaintiffs' memorandum of law to be considered is a memo dated February 10, 2003, and entitled: "Connecticut Tip Credit." This memo was never provided to McCaslin. It was written by Denny, the director of corporate affairs. Denny testified that she was not familiar with the act. She also testified that she never took any steps to ensure that Connecticut restaurants complied with the act even though she was the person in charge of wage and hour compliance in restaurants owned by Brinker International. Finally, she further testified that she did not believe that it was her duty to be proactive in ensuring compliance with Connecticut law, both because nobody from Brinker International instructed her that that was one of her duties and because "all that we could do, [given] a very small pocket of people available," was to respond to daily telephone inquiries as opposed to responding proactively by learning the applicable Connecticut law and providing it to Connecticut restaurant personnel. The reality is that the person in charge of wage and hour compliance for restaurants owned by Brinker International in this state, when asked specific questions about that law, dissemination of information concerning wages, hours and the application of tip credit to wages, about which employee categories were amenable under the law, and a host of other applicable questions, most frequently responded, "I don't know."

It is that mental poverty concerning this state's law about which the plaintiffs complain here. Denny and McCaslin were employees of Brinker International whose job it was to ensure that those in charge of Connecticut restaurants knew of the need to segregate the kinds of tasks employees performed so as to apply General Statutes § 31-60 (minimum wage law) properly

and to know which employees and which tasks were ineligible for the employer's application of tip credit to wages earned. Brinker International's argument that the plaintiffs cannot "connect" any conduct by it with harm to employees in Connecticut restaurants it owned is wholly unpersuasive. Brinker International cannot say that it is not liable to the plaintiffs because they did not provide their Connecticut restaurant management with applicable information. There can be no doubt that employees of Brinker International wrote the documents that governed what their Connecticut restaurant managers knew of the act and those managers' responsibilities under that law. If there were, in fact, violations of § 31-60 that harmed Connecticut employees because the application of corporate policies resulted in their receiving smaller paychecks, it cannot seriously be argued that there was no tortious conduct by Brinker International in this state. Conduct is "tortious" for the purpose of jurisdiction when it violates a state statute. See *Teleco Oilfield Services, Inc.* v. *Skandia Ins. Co.*, 656 F. Sup. 753, 758 (D. Conn. 1987).

Under *Knipple*, the only remaining inquiry is whether the exercise of jurisdiction over this defendant violated the constitutional principle of due process. Under the due process standard, a nonresident must have "minimum contacts" with the forum state so as "purposefully [to] avail himself of the privileges and benefits of the forum state." *United States Surgical Corp.* v. *Imagyn Medical Technologies, Inc.*, 25 F. Sup. 2d 40, 44–45 (D. Conn. 1998); see also *Frazer* v. *McGowan*, 198 Conn. 243, 247, 502 A.2d 905 (1986). Generally, the application of due process requirements involves an inquiry into the totality of contacts with the forum in an effort to determine whether the defendant could reasonably have anticipated being sued here. Brinker International, at a minimum, formulated a wage policy affecting the earnings of these Connecticut residents employed in a

Connecticut restaurant (Chili's Grill & Bar) from which this same defendant reaped rewards. When a defendant engages in activities that "create continuing obligations" between itself and residents of the forum state; *Travelers Health Assn.* v. *Virginia*, 339 U.S. 643, 648, 70 S. Ct. 927, 94 L. Ed. 1154 (1950); it avails itself of "the privilege of conducting business" in that state and is subject to personal jurisdiction in its courts. *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Brinker International here had a continuing obligation to pay the plaintiffs in full compliance with our state's minimum wage law, and its obligation was to perform as expected under the terms of the plaintiffs' hiring.

## III

## CONCLUSION

There is jurisdiction over Brinker International for all of the aforementioned reasons. Its motion to dismiss is, therefore, denied.