JOSEPH F. COOPER *v.* PITNEY BOWES, INC., ET AL.*

Superior Court, Judicial District of Hartford

File No. CV-05-4012091S

Memorandum filed January 9, 2007

*Phelon, Fitzgerald & Wood, PC,* for the plaintiff.

*Edwards, Angell, Palmer & Dodge, LLP,* for the defendants.

* On January 23, 2007, defendant PSI Group, Inc., successfully petitioned to remove this case to the United States District Court in Bridgeport. Docket No. 307CZ116SRU.

MILLER, J. The present action arises from the alleged failure of the defendants, Pitney Bowes, Inc. (Pitney Bowes), and PSI Group, Inc. (PSI), to pay the plaintiff, Joseph F. Cooper, commissions owed as part of an employment contract. The plaintiff has alleged the following facts in his amended complaint. The plaintiff was hired by Siemens Diematic Mail Services, LLC (Siemens Diematic), in May, 2002, to sell mail sorting services; he came to work for Siemens Diematic when that company acquired his previous employer. In late 2002 or early 2003, Pitney Bowes acquired the sorting operations of Siemens Diematic and retained the plaintiff as an employee. In June, 2004, Pitney Bowes terminated the plaintiff's employment, and allegedly refused and failed to pay the plaintiff commissions owed. The plaintiff commenced the present action by filing a complaint against Pitney Bowes on May 17, 2005, asserting a claim for a violation of Connecticut's wage statute pursuant to General Statutes § 31-71a et seq. and a claim for unjust enrichment.

On July 3, 2006, Pitney Bowes filed a motion for summary judgment on the grounds that Pitney Bowes did not employ the plaintiff and that Pitney Bowes is not liable for the actions of its wholly owned subsidiary, PSI, which did employ the plaintiff. The plaintiff has objected to the defendant's motion, arguing that he was only nominally employed by PSI because of the interrelationship between a third entity, Pitney Bowes Management Services, Inc., and the defendants, thereby establishing a genuine issue of material fact as to whether Pitney Bowes was the plaintiff's employer. The plaintiff also argues that there exists a question of fact as to which entities unjustly benefited from the plaintiff's work.

## I

### COUNT ONE—UNPAID WAGES

The plaintiff's first count against Pitney Bowes seeks unpaid commissions allegedly owed the plaintiff, pursu-

ant to § 31-71a et. seq. In its motion for summary judgment, Pitney Bowes argues that there is no genuine issue of material fact that Pitney Bowes was not the plaintiff's employer and that Pitney Bowes is entitled to judgment as a matter of law. The plaintiff counters that under the "single employer" test,[1] there exist genuine issues of material fact concerning whether PSI or Pitney Bowes was the plaintiff's employer.

General Statutes § 31-72 provides in relevant part: "When any employer fails to pay an employee wages . . . or fails to compensate an employee . . . such employee . . . may recover, in a civil action, twice the full amount of such wages . . . ." An employee is defined to include "any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased person, the conservator of the estate of an incompetent, or the receiver, trustee, successor or assignee of any of the same, employing any person, including the state and any political subdivision thereof." General Statutes § 31-71a (1). An employee is defined to include "any person suffered or permitted to work by an employer . . . ." General Statutes § 31-71a (2).

In the present case, it is undisputed that PSI is a wholly owned subsidiary of Pitney Bowes. It is also undisputed that the plaintiff's employment application and offer letter bore the heading "PSI Group, Inc., A Pitney Bowes Company." "[I]t is a fundamental principle of corporate law that the parent corporation and its subsidiary are treated as separate and distinct legal persons even though the parent owns all the shares in

---

[1] To determine whether two separate entities are a single employer, the court will examine "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Murray* v. *Miner*, 74 F.3d 402, 404 (2d Cir. 1996).

the subsidiary and the two enterprises have identical directors and officers. Such control, after all, is no more than a normal consequence of controlling share ownership." (Internal quotation marks omitted.) *Hersey* v. *Lonrho, Inc.*, 73 Conn. App. 78, 83, 807 A.2d 1009 (2002). Despite PSI's status as a distinct entity and subsidiary of Pitney Bowes, and despite the documentation that the plaintiff applied to and was offered a job from PSI, the plaintiff argues that Pitney Bowes is the plaintiff's employer under the "single employer" test. The court disagrees.

There has only been one Connecticut state case recognizing the single employer test. In *Fleming* v. *Asea Brown Boveri, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-99-0586460 (January 6, 2006) (*Hon. Robert Satter*, judge trial referee), which dealt with employment discrimination, the court recognized that the single employer test is used by "federal courts in employment discrimination claims brought under Title VII"; see Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; to determine whether two corporate entities acted as a single employer. Prior to *Fleming*, Judge Tobin noted that the single employer test was not "of general applicability" and that the plaintiffs were unable to "[provide] any authority to show that the courts of Connecticut (or any state) have applied the single employer doctrine outside the context of collective bargaining." *Fairfield County Plastic Surgery, P.C.* v. *Topham*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-04-4001683 (July 15, 2005) (*Tobin, J.*). To date, there has not been a Connecticut state case utilizing the single employer test in an action for unpaid wages or unjust enrichment. Following the logic of the courts that have considered, and rejected, the single employer test outside the context of employment discrimination and collective bar-

gaining suits, the plaintiff's reliance on the single employer test in support of his unpaid wages and unjust enrichment claims is misplaced and inapplicable.

In the present case, the plaintiff has submitted no evidence indicating that Pitney Bowes, rather than PSI, was responsible for compensating the plaintiff, or was responsible for any decisions regarding his employment. To the contrary, the plaintiff's offer letter from PSI clearly states that the plaintiff would "be eligible to participate in PSI Group's Sales Commission Plan." Additionally, Pitney Bowes has submitted two affidavits stating unequivocally that PSI was the plaintiff's employer.[2] Further, the plaintiff's theory of recovery under the single employer test has never been applied to a claim for payment of wages, and has not been recognized in our courts beyond the narrow exception of employment discrimination and collective bargaining. The motion for summary judgment is therefore granted as to the plaintiff's unpaid wage claim.

## II

### COUNT TWO—UNJUST ENRICHMENT

Pitney Bowes has also moved for summary judgment on the plaintiff's unjust enrichment claim, arguing again that Pitney Bowes did not employ the plaintiff and that Pitney Bowes is not liable for the actions of its subsidiary, PSI. The plaintiff counters that the interrelationship of the business entities in the present case

---

[2] In one of the defendant's exhibits, an affidavit of Rosalind Gordon, vice president and human resources legal counsel at Pitney Bowes, Gordon states that the plaintiff "was never employed by Pitney Bowes." She also states that "PSI Group . . . hired Plaintiff, retained ultimate responsibility and authority for all decisions regarding Plaintiff's employment, established his work hours and duties, supervised his performance, set the terms of compensation and terminated his employment." Similarly, in a second exhibit of the defendants, an affidavit of Joan Luebbert, vice president of human resources at PSI, Luebbert states that the plaintiff "is a former PSI employee" and that "PSI was entirely responsible for the terms of Plaintiff's employment."

produces a genuine issue of material fact. The elements of a claim for unjust enrichment are well established. "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) *Jo-Ann Stores, Inc.* v. *Property Operating Co., LLC*, 91 Conn. App. 179, 194, 880 A.2d 945 (2005). "Unjust enrichment is a very broad and flexible equitable doctrine that has as its basis the principle that it is contrary to equity and good conscience for a defendant to retain a benefit that has come to him at the expense of the plaintiff." *Gagne* v. *Vaccaro*, 255 Conn. 390, 409, 766 A.2d 416 (2001), on appeal after remand, 80 Conn. App. 436, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004).

In opposition to summary judgment on the unjust enrichment claim, the plaintiff alleges that he provided services under a lucrative contract with Aetna Life Insurance, which would, over time, entitle him to substantial commissions. The plaintiff argues that a third entity, Pitney Bowes Management Services, collected fees associated with services provided by the plaintiff on this particular account, and that Pitney Bowes and PSI ultimately received revenues from this account. While the plaintiff argues that questions of fact exist regarding which entities benefited from the plaintiff's work on the Aetna Life Insurance contract, and which entity would ultimately be responsible for paying the plaintiff's commission, the plaintiff has submitted no admissible evidence showing that Pitney Bowes Management Services and Pitney Bowes are interrelated or received revenues for services provided by the plaintiff.

The defendant has shown that there are no genuine issues of material fact regarding the unjust enrichment claim and that the plaintiff has not established any

issues of material fact. The plaintiff has not produced admissible evidence showing that Pitney Bowes benefited from the plaintiff's work or that Pitney Bowes unjustly did not pay the plaintiff commissions owed.[3] The plaintiff has merely asserted unsupported facts in opposition to summary judgment without producing admissible evidence. "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]." (Internal quotation marks omitted.) *Allstate Ins. Co.* v. *Barron*, 269 Conn. 394, 406, 848 A.2d 1165 (2004); accord *Ennis* v. *Dixon*, Superior Court, judicial district

---

[3] With his motion in opposition to summary judgment, the plaintiff has submitted numerous unauthenticated hearsay documents, and the defendants have objected. One of the plaintiff's exhibits is a copy of a professional service agreement between Aetna Life Insurance and Pitney Bowes. A second exhibit is a Pitney Bowes and Pitney Bowes Management Services business address inquiry document. A third exhibit is a Pitney Bowes and PSI payment spreadsheet. The court will not consider these unauthenticated documents. Hearsay evidence is inadmissible for the purpose of defeating a motion for summary judgment. *Great Country Bank* v. *Pastore*, 241 Conn. 423, 437, 696 A.2d 1254 (1997). "Hearsay statements are insufficient to contradict facts offered by the moving party . . . and if an affidavit contains inadmissible evidence it will be disregarded." (Citations omitted.) *2830 Whitney Avenue Corp.* v. *Heritage Canal Development Associates, Inc.*, 33 Conn. App. 563, 568–69, 636 A.2d 1377 (1994). "[B]efore a document may be considered by the court in support of a motion for summary judgment, 'there must be a preliminary showing of [the document's] genuineness, i.e., that the proffered item of evidence is what its proponent claims it to be. The requirement of authentication applies to all types of evidence, including writings . . . .' Conn. Code Evid. § 9-1 (a), commentary. Documents in support of or in opposition to a motion for summary judgment may be authenticated in a variety of ways, including, but not limited to, a certified copy of a document or the addition of an affidavit by a person with personal knowledge that the offered evidence is a true and accurate representation of what its proponent claims it to be." *New Haven* v. *Pantani*, 89 Conn. App. 675, 679, 874 A.2d 849 (2005). "Practice Book § [17-45], although containing the phrase including but not limited to, contemplates that supporting documents to a motion for summary judgment be made under oath or be otherwise reliable. . . . [The] rules would be meaningless if they could be circumvented by filing [unauthenticated documents] in support of or in opposition to summary judgment." (Internal quotation marks omitted.) Id., 678.

of Hartford, Docket No. CV-04 4001042S (January 20, 2006) (40 Conn. L. Rptr. 620) (*Miller, J.*). The motion for summary judgment as to the unjust enrichment claim is also granted.