## PRO PERFORMANCE CORPORATE SERVICES, INC.
## *v.* FRANK GOLDMAN

Superior Court   Judicial District of   File No. CV01-0186618S
Stamford-Norwalk at Stamford

Memorandum filed June 20, 2002

*Durkin & Polera,* for the plaintiff.

*Trow & Sank,* for the defendant.

HON. FRANK H. D'ANDREA, JR., JUDGE TRIAL REFEREE. This action originates from an unpaid debt arising out of a transaction between the plaintiff, Pro Performance Corporate Services, Inc., and the nonresident defendant, Frank Goldman. The plaintiff alleges the following facts: It is a corporation located in Stamford, and is in the business of providing tickets and related services for, inter alia, major sporting events. On or about January 18, 2001, the defendant, a resident of Baltimore, Maryland, contacted the plaintiff by telephone for the purpose of retaining the plaintiff in order to locate and supply the defendant with tickets and related services for Super Bowl XXXV. The defendant retained the plaintiff's services whereby the latter

would undertake a search to locate four to six tickets to the Super Bowl and passes to various related social events. The plaintiff's performance of these services would be conducted from its Connecticut office. The defendant does not dispute that he agreed to pay the plaintiff for its services at prices to be agreed upon, depending upon the type and locations of the seats and related accommodations.

Between January 18 and January 28, 2001, the defendant maintained a regular and systematic course of almost daily communications with the plaintiff. The defendant admits to initiating the contact with the plaintiff, and admits that calls to the plaintiff were made from both his business and residence addresses.

At some point after retaining the plaintiff's services, the defendant independently arranged to purchase four or five (the defendant avers five, the plaintiff alleges four) Super Bowl tickets from a third party located in Florida. The plaintiff and the defendant reached an agreement pursuant to which the plaintiff would pick up those tickets, pay for them on behalf of the defendant with its own funds, and then deliver those tickets to the defendant prior to the game. In a slightly different rendition, the defendant avers that after informing the plaintiff that he wanted to upgrade the third party tickets, and obtain more tickets, the plaintiff's representative told the defendant that he would arrange to obtain the third party tickets and sell them only if he could get the premium tickets the defendant preferred.

On January 27, 2001,[1] the defendant met with the plaintiff's representative at a hotel in Florida, received a total of eight tickets from the plaintiff, and signed a purchase agreement to pay the plaintiff $42,200. The plaintiff alleges that this sum is in return for its services

---

[1] The purchase agreement is dated January 28, 2001, and the signature is dated January 27, 2001.

relative to the picking up and financing of the four tickets from the third party, its own sale and delivery of four tickets to the defendant, and other related services such as locating and supplying a hotel room for three days, and supplying passes to a Super Bowl party. The defendant does not dispute that he accepted the afore-mentioned goods and services from the plaintiff, and, despite due demands, has not paid the agreed upon sum of $42,200.

The plaintiff asserts causes of action for breach of contract, intentional, wilful and malicious breach of contract, fraud, violations of the Connecticut Unfair Trade Practices Act and unjust enrichment. The defendant moves to dismiss the complaint claiming that the court lacks personal jurisdiction over him because he is a resident of Maryland and has not had contacts with Connecticut that would subject him to personal jurisdiction.

Practice Book § 10-31 (a) (2) provides that a "motion to dismiss shall be used to assert . . . lack of jurisdiction over the person . . . ." "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 611, 793 A.2d 215 (2002). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Id., 610. "A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Internal quotation marks omitted.) *Coughlin* v. *Waterbury*, 61 Conn. App. 310, 314, 763 A.2d 1058 (2001).

"A ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action. . . . Motions to dismiss are granted solely on jurisdictional grounds." (Citations omitted; internal quotation marks omitted.) *Villager Pond, Inc.* v. *Darien,* 54 Conn. App. 178, 182, 734 A.2d 1031 (1999). "If a challenge to the court's personal jurisdiction is raised by . . . a nonresident [defendant], the plaintiff must bear the burden of proving the court's jurisdiction." *Knipple* v. *Viking Communications, Ltd.,* 236 Conn. 602, 607, 674 A.2d 426 (1996).

"When a defendant files a motion to dismiss challenging the court's [personal] jurisdiction, a two part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) Id., 606. With regard to the first part of the jurisdictional inquiry, the plaintiff argues that personal jurisdiction over the defendant is authorized by Connecticut's long arm statute under General Statutes § 52-59b (a) (1) and (2). Section 52-59b (a) provides in pertinent part: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state . . . ." Our Supreme Court noted in *Zartolas* v. *Nisenfeld,* 184 Conn. 471, 474, 440 A.2d 179 (1981), that "[t]he General Statutes do not define what the phrase 'transacts any business' means in the context of § 52-59b . . . however . . . we construe the term 'transacts any business' to embrace a single

purposeful business transaction." (Citations omitted.) Id. "Furthermore, the phrase 'transacts any business' in § 52-59b has a broader meaning than the [phrase] '[transacts] business' . . . ." Id., 476 n.4.

The plaintiff contends that the defendant meets the "[t]ransacts any business within the state" requirement pursuant to § 52-59b (a) (1) because the defendant entered into a series of negotiations and oral agreements with the plaintiff, while the plaintiff was in Connecticut, in order to obtain tickets and related services. The defendant admits that he initially contacted the plaintiff on or about January 16, 2002, and he had additional conversations regarding the tickets prior to the time he actually received them. The defendant admits that on January 27, 2001, he met with the plaintiff's representative in a Florida hotel, and upon receiving eight tickets to the Super Bowl, signed a purchase agreement in the amount of $42,200 for the cost of eight tickets.

The plaintiff submits an affidavit in which Scott Klansky, the plaintiff's principal, states that he received the initial telephone call from the defendant in the plaintiff's Connecticut office and that the additional conversations he had with the defendant also took place while Klansky was in Connecticut. In his affidavit, Klansky also avers that while the defendant signed a written agreement and promissory note in Florida, the plaintiff prepared the written agreement in its Connecticut office, and all of the other services the plaintiff performed for the defendant that related to obtaining the tickets were performed in Connecticut. In further support of its argument that the defendant's contacts fall within the "[t]ransacts any business" requirement of § 52-59b (a) (1), the plaintiff maintains and the defendant admits that he had indicated that he wanted the Super Bowl tickets for several important clients, and, in fact, now claims that he was forced into the written

agreement because he had already made arrangements for several of his clients and associates to attend the game.

The cases the defendant relies on are not supportive of his position.[2] Unlike the defendants in those cases,

---

[2] The defendant correctly cites *Lawrence Wisser & Co.* v. *Slender You, Inc.*, 695 F. Sup. 1560 (S.D.N.Y. 1988) *(Lawrence)* for the proposition that "telephone calls and telefax transmissions do not, without more, constitute transacting business." Id., 1562. The defendant in *Lawrence*, a citizen of Oklahoma and sole proprietor of a public relations business, entered into an agreement with the plaintiff, a New York corporation also providing public relations services, to work on the account of a client. Id., 1560–61. The defendant worked on the account from her offices in Oklahoma, traveled to the client's office in Tennessee, and traveled once to New England in connection with her work on the account. She never traveled to New York in connection with her work, and her contact with the plaintiff was solely via telephone and faxes. Id., 1561. Unlike the defendant in the present case, however, the defendant in *Lawrence* "did not purposely avail herself of the privilege of conducting activities in New York, and thus was not transacting business [within the] state . . . ." Id., 1563. Moreover, pursuant to the relevant long arm statute, the plaintiff in *Lawrence* was not able to show that "its [cause] of action arose from the transaction of business within the state." Id.

The defendant's actions in the present case differ from those of the defendant in *Lawrence* because the defendant's actions here amount to more than telephone transmissions. The defendant procured the services of a Connecticut corporation, which he, in fact, received.

The defendant also relies upon *Custom Navigation Systems, Inc.* v. *Pincus*, 935 F. Sup. 117 (D. Conn. 1995), for the proposition that "[t]he transmission of communications between an out-of-state defendant and a [party] within the jurisdiction does not, by itself, constitute the transaction of business within the forum state." (Internal quotation marks omitted.) Id., 119. The nonresident defendant in *Custom Navigation Systems, Inc.*, telephoned and wrote to the plaintiff in Connecticut on a few occasions in connection with the plaintiff's sale of equipment, which the plaintiff was to deliver and install in New York. Id. According to the affidavits in the present action, the defendant maintained daily communications via telephone with the plaintiff over a twelve day period and all of the services the plaintiff provided to the defendant in connection with locating the tickets were performed by the plaintiff in Connecticut.

Other cases cited by the defendant are also unavailing. In *Greene* v. *Sha-Na-Na*, 637 F. Sup. 591 (D. Conn. 1986), the court held that it did not have jurisdiction over the defendants under General Statutes § 52-59b (a) (1) because the plaintiff's suit was filed before the defendants engaged in the

this defendant's purposeful conduct of securing the Connecticut based services of the plaintiff constitutes "transact[ing] any business" with the meaning of § 52-59b (a) (1). In addition, in accordance with *Zartolas* v. *Nisenfeld*, supra, 184 Conn. 475, this defendant's "purposeful Connecticut related activity suffices to locate [the defendant's] transaction . . . within this state . . . ." Counts one, two and five of the plaintiff's complaint are all causes of action which can arise from the defendant's transaction of business. "In determining whether the plaintiff's cause[s] of action [arise] from the [defendant's] transaction of business within this state we do not resort to a rigid formula. Rather, we balance considerations of public policy, common sense, and the chronology and geography of the relevant factors." Id., 477.

Accordingly, the court in *MS/C Communications, Inc.* v. *Hamilton*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 266263 (August 8, 1990 (2 Conn. L. Rptr. 247) (*Spear, J.*), found, based upon such considerations and the plaintiff's allegations,

conduct which allegedly gave rise to the plaintiff's causes of action. Id., 595. The court held, "[i]t is well established that jurisdiction is to be determined by examining the conduct of the defendants as of the time of service of the complaint." Id. The defendant in the present case relies on the court's statement in *Greene* that the "individual defendants' October 15, 1984 telephone call, October 16, 1984 telegram, and October 22, 1984 letter . . . to the plaintiff in Connecticut, [were] insufficient to constitute the transacting of business in Connecticut." Id., 596. These were informational communications that the defendants transmitted to the plaintiff, regarding the plaintiff's expected performance in Las Vegas, and the consequences of declining. Id., 594.

The last case the defendant relies upon is *Connecticut Aircraft Corp.* v. *Smith*, 574 F. Sup. 626 (D. Conn. 1983), where the court held that there was "no activity on the part of [the nonresident defendant] in Connecticut which may be construed as a transaction of business." Id., 631. In that case, the nonresident defendant placed calls to other named defendants (former employees of the plaintiff) in Connecticut and hired them as part of a business venture taking place in Florida. Id., 628. The plaintiff alleged that the defendants acquired its trade secrets to use in the Florida venture. Id.

that "the defendants' conduct constitute[d] transacting business within the State of Connecticut." Id., 249. The defendants called the plaintiff at its place of business in Connecticut, entered into an oral agreement for services to be rendered by the plaintiff to the defendant, and the complaint alleged that the services were to be performed in Connecticut and paid for by the defendant. Id., 248–49.

Similar to the facts alleged in *MS/C Communications, Inc.*, in the present case, the plaintiff avers that the defendant called its office in Connecticut, and although the parties differ on whether they entered into oral agreements, the defendant does not dispute that the daily telephone communications between the parties, totaling at least forty to fifty calls, occurred over a twelve day period and arose out of the defendant's desire to obtain the plaintiff's services from its office in Connecticut. The defendant also does not dispute that the plaintiff provided services to the defendant, for which he promised to pay. The court finds that it has personal jurisdiction over the defendant pursuant to § 52-59b (a) (1).

In order to find jurisdiction over a nonresident defendant, only one of the provisions of § 52-59b needs to be satisfied. See *Pitruzello* v. *Muro*, 70 Conn. App. 309, 311, 798 A.2d 469 (2002) ("[a] foreign corporation may be haled into court in Connecticut only if a plaintiff alleges jurisdictional facts that, if proven, would satisfy one of the provisions of our long arm statute"). In the present case, however, the plaintiff also argues that the court has personal jurisdiction over the defendant under § 52-59b (a) (2).

Section 52-59b (a) (2) allows a court to exercise personal jurisdiction over "any nonresident individual . . . who in person or through an agent . . . commits a tortious act within the state . . . ." In count three of

the complaint the plaintiff alleges that in order to induce it to carry out its services for the defendant, the defendant made fraudulent representations; such representations were false and the defendant knew as much when he made them, and the plaintiff relied upon such misrepresentations to its detriment. All except one of the alleged misrepresentations relate to the defendant's promise to pay for the plaintiff's services, and except for the plaintiff's actual delivery of tickets to the defendant in Florida, all of the communications between the parties were by telephone.

"In *Knipple* v. *Viking Communications*, [*Ltd.*], supra, 236 Conn. 610–11, the Connecticut Supreme Court held that '[f]alse representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut under [General Statutes] § 33-411 (c) (4) . . . because the alleged misrepresentations . . . would have been made by way of communications sent to and received by [the plaintiff] from the [out-of-state] defendants in Connecticut.' . . . Although in that case the court was addressing the issue of personal jurisdiction under . . . § 33-411 (c) (4), it cited with approval *David* v. *Weitzman*, 677 F. Sup. 95, 98 (D. Conn. 1987), in which the District Court held that the transmission of fraudulent misrepresentations into Connecticut by mail or telephone was 'tortious conduct *in* Connecticut sufficient to establish personal jurisdiction under Connecticut's longarm statute, §§ 33-411 (c) and 52-59b (a) (2).' " (Emphasis added.) *Oppenheim* v. *Erwin*, Superior Court, judicial district of New Haven, Docket No. CV00 0441611 (April 9, 2001) (29 Conn. L. Rptr. 562, 564) (*Licari, J.*). Similarly, in *Cody* v. *Ward*, 954 F. Sup. 43, 45 (D. Conn. 1997), wherein the plaintiff alleged "that . . . he purchased 101,000 shares of . . . stock for $196,000 in reliance on materially false and misleading statements by the defendant," the court concluded that "a nonresident's transmission of fraudulent

misrepresentations to a Connecticut resident by telephone and electronic mail for the purpose of inducing him to buy and hold securities renders the nonresident subject to suit in Connecticut in an action based on the misrepresentations." Id., 44. Observing that "[m]any states assert jurisdiction over a nonresident when, as in this case, oral and written misrepresentations are directed specifically to the forum," the court proclaimed that "[i]nterpreting Connecticut's long arm statute to reach this type of intentional tort is consistent with the statute's remedial purpose of providing Connecticut residents with a convenient forum to seek redress for losses they suffer here as a result of a nonresident's tortious actions [and such an] interpretation . . . is also consistent with Connecticut's traditional adherence to the doctrine that tort cases are governed by the law of the place of injury." Id., 46.

In the present case, the defendant admits engaging in telephone communications with the plaintiff for the purpose of obtaining Super Bowl tickets. The plaintiff alleges that in order to procure its services, the defendant made promises to pay for such services. The defendant signed a written contract which provides in relevant part: "This contract will serve as a promissory note between [the plaintiff] and [the defendant]. I, [the defendant] agree and accept full responsibility for the receipt of the above mentioned goods. I, [the defendant] . . . hereby promise to pay [the plaintiff] a certified check by Wed. 01/31/01 for the full amount of $42,200." The plaintiff alleges that it relied upon the defendant's misrepresentations in good faith and as a result, has sustained damages. The defendant has not denied that he told the plaintiff that he would pay for its services. The defendant admits receiving the tickets and has not denied that he has not paid for them.

Consistent with the authorities that have found fraudulent communications by wire or mail tortious conduct for the purposes of § 52-59b (a) (2), and construing the facts in a light most favorable to the plaintiff, the plaintiff has sustained its burden of proving that the defendant in the present action is amenable to personal jurisdiction under § 52-59b (a) (2).

The "second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) *Knipple* v. *Viking Communications, Ltd.*, supra, 236 Conn. 606. This involves determining whether the nonresident defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (Internal quotation marks omitted.) Id., 606 n.5. "Either specific jurisdiction or general jurisdiction can satisfy the constitutional requirement of sufficient minimum contacts between the defendant and the forum." *Thompson* v. *Chemical Bank*, 234 Conn. 281, 287–88, 661 A.2d 595 (1995).

In the present case, the constitutional requirement is satisfied under specific jurisdiction. "A state court will have specific jurisdiction over a nonresident defendant whenever the defendant has purposefully directed [its] activities at residents of the forum . . . and the litigation [has] result[ed] from alleged injuries that arise out of or relate to those activities." (Internal quotation marks omitted.) *Knipple* v. *Viking Communications, Ltd.*, supra, 236 Conn. 606 n.6. The plaintiff has alleged an injury that arises out of or relates to the defendant's activities in procuring its services. "When, [as here] the controversy is specifically related to a defendant's contacts with a forum, there is sufficient due process contact if the defendant has purposefully directed his activities at residents of the forum and the litigation

results from alleged injuries that arise out of or relate to those activities." (Internal quotation marks omitted.) *David* v. *Weitzman,* supra, 677 F. Sup. 99.

The court finds that it has personal jurisdiction over the defendant under § 52-59b (a) (1) and (2), and that its exercise of this jurisdiction does not offend constitutional principles of due process. Accordingly, the court denies the defendant's motion to dismiss.