**Robert J. MILNE, Plaintiff,**

v.

**CATUOGNO COURT REPORTING SERVICES, INC., Sten–Tel, Inc., and Raymond F. Catuogno, Defendants.**

No. 3:02CV660 (GLG).

United States District Court,
D. Connecticut.

Nov. 19, 2002.

Patrick Tomasiewicz, Fazzano, Tomasiewiewicz & Paulding, West Hartford, CT, for Plaintiff.

Linda Clifford Hadley, Kenneth M. Rozich, Krasow, Garlick & Hadley, Hartford, CT, L. Jeffrey Meehan, Doherty, Wallace, Pillsbury & Murphy, Springfield, MA, for Defendants.

### Memorandum Decision

GOETTEL, District Judge.

## I. BACKGROUND/FACTS

The plaintiff, Robert Milne, brought this action against the defendants, Catuogno

Court Reporting Services, Inc. (CCRS), Sten Tel, Inc. (Sten–Tel), and Raymond F. Catuogno for money damages arising from accounting services he provided to the defendants, for which he allegedly has not been paid. Additionally, he asserts claims against the defendants for negligent infliction of emotional distress, fraud and negligent misrepresentation. In accordance with Fed.R.Civ.P. 12(b)(2), the defendants have moved to dismiss [**Doc. 5**] the plaintiff's complaint for lack of personal jurisdiction. The defendants claim that this Court lacks personal jurisdiction over them because they do not have the requisite minimum contacts with the state of Connecticut. We **DENY** the defendants' motion in part, and **GRANT** it in part.

After a review of the affidavits that the parties submitted, the Court determined that an evidentiary hearing should be held on the matter of personal jurisdiction. The following relevant facts were obtained from the complaint and all documents submitted therewith, as well as our previous decision dated July 18, 2002 [**Doc. 16**], and from the evidentiary hearing held on September 30, 2002.

Mr. Catuogno is the owner, President, and Chief Executive Officer of CCRS. Also, he owns Sten–Tel partially with his son, and is its Chief Executive Officer. The plaintiff, a certified public accountant, alleges that, from 1986 to 2001, he provided accounting services to the defendants and is owed $31,223.25 in unpaid fees for such services.[1] He claims further that the defendants breached an agreement to pay him a bonus or end-of-service fee of $40,000 upon the sale of CCRS.

Presently, the plaintiff resides in West Hartford, Connecticut. He is an accountant licensed to practice in both Massachusetts and Connecticut. At the time he began doing business with the defendants, the plaintiff's office was located in Springfield, Massachusetts. He later closed that office and provided accounting services to the defendants mostly at their places of business, as well as from his home in Connecticut.

Mr. Milne and Mr. Catuogno were very good friends until the fall of 2001. At that time, their friendship had been irretrievably broken. Consequently, Mr. Catuogno fired Mr. Milne by letter sent to his Connecticut residence dated November 17, 2001. Mr. Catuogno testified that at the time he terminated Mr. Milne's employ with defendant companies, he owed him an estimated $25,000 in unpaid fees for accounting services rendered. This law suit followed. Additional facts will be set forth as necessary.

## II. DISCUSSION

We set forth first the legal principles that guide our resolution of the defendants' motion to dismiss. This diversity case presents a question of personal jurisdiction over a nonresident individual and two foreign corporations. Whether such entities are amenable to suit in federal court is determined by the law of the state in which the court sits. Fed.R.Civ.P. 4(k)(1)(A); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 124 (2d Cir.2002). Our resolution of the jurisdictional issue involves a two-part analysis. *See Knipple v. Viking Communications Ltd.,* 236 Conn. 602, 607, 674 A.2d 426 (1996). As a threshold matter, the Court must determine whether Connecticut's applicable long-arm statute reaches a particular defendant.[2] Because

---

**1.** At the evidentiary hearing, the plaintiff stated the amount of unpaid fees in question

relates to services he provided to the defendants after 1992, and not before that time.

**2.** The plaintiff incorrectly argues that Conn.

this case involves a nonresident defendant and foreign corporate defendants, two separate long-arm statutes must be considered: Conn. Gen.Stat. § 52–59b (2002), which applies to nonresident defendants, and Conn. Gen.Stat. § 33–929 (2002), which applies to foreign corporate defendants. Only if the court finds the state long-arm statute to be applicable does it reach the second part of the analysis, which examines whether asserting jurisdiction violates constitutional principles of due process. *Lombard Bros., Inc. v. General Asset Mgmt. Co.,* 190 Conn. 245, 250 460 A.2d 481 (1983).

The defendants challenge the Court's jurisdiction in this case. It is, therefore, the plaintiff's burden to prove facts establishing that jurisdiction is proper. *Rosenblit v. Danaher,* 206 Conn. 125, 130, 537 A.2d 145, 147 (1988). Ordinarily, the plaintiff would have to make only a prima facie showing that jurisdiction is proper. When, as here, an evidentiary hearing has been conducted, the plaintiff's burden increases such that he must prove jurisdictional facts by a preponderance of the evidence. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 198 n. 3 (2d Cir.) *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).

### A. Long-arm Jurisdiction under Conn. Gen.Stat. § 33–929.

■ There are two subsections that provide long-arm jurisdiction over foreign corporations in section 33–929: subsections 33–929(e) and (f). Subsection 33–929(e) provides in relevant part: "Every foreign corporation which transacts business in this state in violation of section 33–920 . . . shall be subject to suit in this state upon any cause of action arising out of such

business." Subsection 33–929(f) provides in relevant part:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising . . . (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state . . . .

We consider now whether either of these statutes applies to Sten–Tel and CCRS.

#### 1. *Jurisdiction as to Sten–Tel*

In accordance with subsection 33–929(e), we may assert jurisdiction over a foreign corporation only upon proof of "two conditions: the transaction of business in this state, and a cause of action arising out of the transaction of such business." *Wilkinson v. Boats Unlimited, Inc.,* 236 Conn. 78, 86, 670 A.2d 1296 (1996). "The term 'transacting business' is not broadly interpreted in Connecticut." *Chemical Trading v. Manufacture de Produits Chimiques de Tournan,* 870 F.Supp. 21, 23 (D.Conn.1994); *Hospitality Systems, Inc. v. Oriental World Trading Co. LTD.,* 2000 WL 177441 (Feb. 1, 2000). Further, section 33–920 excludes specifically various activities that are not considered the transacting of business within that section and subsection 33–929(e). Section 33–920 states in relevant part:

> (b) The following activities, among others, do not constitute transacting busi-

Gen.Stat. § 52–59b is adequate to subject all of the defendants to jurisdiction here. While this statute applies to nonresident individuals,

it does not apply to foreign corporations and, therefore, cannot be the basis of long-arm jurisdiction over the defendant corporations.

ness within the meaning of subsection (a) of this section ... (6) soliciting or obtaining orders, whether by mail or through employees or agents or otherwise, if the orders require acceptance outside this state before they become contracts.

The plaintiff argues that Sten–Tel transacts business within this state because it has a franchise in Connecticut and provides transcription services to businesses here.[3] We disagree.

Sten–Tel's franchise in Connecticut is known as Sten–Tel 86. The franchise agreement was entered into in Massachusetts. As part of that agreement, Sten–Tel, on at least one occasion, provided and installed computer equipment for the franchisee, thereby allowing it to perform the same type of transcription services as Sten–Tel.[4] For this, Sten–Tel billed Sten–Tel 86 for $2,907. There is no evidence that Sten–Tel had any other contact with Sten–Tel 86 in that regard. The franchise agreement requires also that the franchisee pay an annual maintenance fee to Sten–Tel, as well as referral fees to Sten–Tel when it refers customers to Sten–Tel 86. The record contains one bill for maintenance fees in the amount of $500, which covered a time period from February 2, 2000 to January 31, 2001. Absent evidence to the contrary, Sten–Tel has no other contacts with Sten–Tel 86. Further, Sten–Tel has no other franchises in Connecticut; it has no offices, telephone numbers, employees or offices here, and owns no real property or holds any bank accounts in this state.

The evidence reveals that Sten–Tel's interactions and/or connections with Sten–Tel 86 were limited in the past to providing and installing a computer system. Its present contacts with Sten–Tel 86 are confined to the collection of maintenance and referral fees. Such isolated and limited contacts between Sten–Tel and its Connecticut franchisee are not sufficient, under the particular circumstances of this case, to extend jurisdiction over Sten–Tel. See *Hospitality Sys.*, 2000 WL 177441, at *3–4 (holding presence of office within state not dispositive of jurisdictional question); *Moore v. Home Servs. Alliance*, CV96 0151514 S, 1996 WL 704380 (Dec. 2, 1996) (holding franchisor not subject to jurisdiction under statute for customer's breach of contract claim against franchisee due to mere existence of franchisee in forum state); *Airguard Industries, Inc. v. New England Air Filters, Inc.*, NO. 326415, 1992 WL 369535 (Dec. 1, 1992) (holding corporation with Connecticut office as base of operations for resident sales manager and roughly $100,000 in sales over several years not "transacting business" within the statute).

The plaintiff claims further that by providing telephonic transcription services to businesses in Connecticut, Sten–Tel is transacting business here. Customers utilize Sten–Tel's services by dialing a

---

**3.** The plaintiff alleges other facts in support of his claim that Sten–Tel is subject to jurisdiction in Connecticut. For instance, he asserts that Sten–Tel has franchises in other states and hired a Connecticut law firm at one time. Further, he claims that Mr. Catuogno "touted" Sten–Tel to him as a nationwide company. Such assertions lend no support to the plaintiff's claim.

**4.** The plaintiff argues that Sten–Tel is subject to jurisdiction in this state under Conn. Gen. Stat. § 52–59b(a)(5) for setting up a computer network at the location of Sten–Tel 86. As we have stated already, that that statute does not apply to foreign corporations. *See supra* note 2. Further, the plaintiff presented no evidence or authority showing that the computer system Sten–Tel provided and installed for Sten–Tel 86 was a "computer network" as defined in Conn. Gen.Stat. § 33–451.

number on a standard phone line, which connects into a computer located in Massachusetts. The computer records the dictation, which is distributed to a typist.[5] The typist then transmits the typed version back to Sten–Tel's computers in Springfield, Massachusetts. The customer retrieves the transcription via computer, if he has one, or calls Sten–Tel for a hard copy of the transcription.

The record contains insufficient evidence of how often or to what Connecticut businesses Sten–Tel provided such services.[6] Absent such evidence, and based on Connecticut's somewhat narrow interpretation of what constitutes transacting business, the plaintiff has failed to show by a preponderance of the evidence that Sten–Tel's activities amounted to transacting business within subsection 33–929(e). *See Chemical Trading*, 870 F.Supp. at 23; *Hospitality Systems, Inc.*, 2000 WL 177441, at *2.

■ Additionally, the plaintiff argues further that because Sten–Tel advertises via an internet web site, it is transacting business under subsection 33–929(e). Based on our discussion below, we find that such solicitation of business falls within one of the enumerated exceptions to "transacting business" in section 33–920. Specifically, section 33–920(b)(6) excludes, "solicitation or obtaining orders . . . if the orders require acceptance outside this state before they become contracts. . . ." Personal jurisdiction over Sten–Tel, therefore, does not lie under subsection 33–929(e). We turn now to jurisdiction under subsection 33–929(f)(2).

■ The Connecticut Supreme Court has held that, under section 33–929(f)(2), a cause of action "arising . . . out of" a de-

fendant foreign corporation's contacts with this state "does not require that the cause of action and the contacts be causally connected." *Thomason v. Chemical Bank*, 234 Conn. 281, 292, 661 A.2d 595 (1995). In other words, "a plaintiff's cause of action aris[es] . . . out of . . . business solicited in this state if, at the time the defendant engaged in solicitation in Connecticut, it was reasonably foreseeable that, as a result of that solicitation, the defendant could be sued in Connecticut by a person on a cause of action similar to that now being brought by the plaintiff." *Id.* at 296, 661 A.2d 595 (quotation marks omitted). Under subsection 33–929(f)(2), therefore, the "plaintiff need only demonstrate that the defendant could reasonably have anticipated being haled into court here by *some person who had been solicited* in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation;" *Id.* (emphasis in original); and that the corporation has repeatedly so solicited such business.

We will assume that the plaintiff demonstrated that the defendant "could reasonably have anticipated being haled into court here by *some person who had been solicited* in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation." *Id.* Nevertheless, the plaintiff has failed to show that Sten–Tel has repeatedly so solicited business in this state, as the statute requires.

The only facts the plaintiff avers in support of his solicitation argument is that Sten–Tel advertises its services via an in-

---

**5.** Typists are located throughout the United States. None, however, are located in Connecticut.

**6.** We recognize that the plaintiff claims that CCRS has done business as Sten–Tel, but in suing Sten–Tel as an independent corporation, the plaintiff must show facts sufficient to support jurisdiction over it.

ternet web site. That alone, however, is insufficient under subsection 33–929(f)(2) to extend our jurisdiction over Sten–Tel.

Sten–Tel's web site is passive and informational in nature. "There is no evidence that any user in Connecticut accessed [Sten–Tel's] Web site or purchased [services] based upon the Web site advertisement. There is also no evidence that this Web site advertisement was directed at Connecticut anymore than anyplace else in the nation." *Edberg v. Neogen Corp.,* 17 F.Supp.2d 104, 114 (D.Conn.1998) (citing *E–Data Corp., v. Micropatent Corp.,* 989 F.Supp. 173, (D.Conn.1997)); *see also Thomason,* 234 Conn. at 297, 298, 661 A.2d 595 (listing facts sufficient to satisfy "repeatedly so solicited" language of subsection 33–411(c)(2), now subsection 33–929(f)(2)). Although the web site allows viewers to download at no cost various programs to facilitate use of Sten–Tel's services, these services could not be ordered directly from the web site. *See Edberg,* 17 F.Supp.2d at 114. Instead, an "888" number is provided. A potential customer calling the "888" would be connected to a representative of Sten–Tel located in Massachusetts. Mere use of an internet advertisement, without more, is insufficient to constitute solicitation under Conn. Gen. Stat, § 33–929(f)(2). *Id.* at 114, 115; *see also MacMullen v. Villa Roma Country Club,* No. CV 970405070S, 1998 WL 867271, *3 (Dec. 3, 1998); *Contra: Inset Sys., Inc. v. Instruction Set Inc.,* 937 F.Supp. 161 (D.Conn. 1996) (holding advertising via internet web site is solicitation of sufficient repetitive nature); *Heroes, Inc., v. Heroes Found.,* 958 F.Supp. 1 (D.D.C.1996) (suggesting existence of web site provides necessary contact with forum state).

Having determined that Connecticut's long-arm statutes do not extend to Sten–Tel's activities in this state, we lack personal jurisdiction over it. We turn now to the question of jurisdiction as it pertains to CCRS.

### 2. Jurisdiction as to CCRS

■ At the outset, we note that our basis for establishing jurisdiction over CCRS is Conn. Gen.Stat. § 33–929(f)(2) and, therefore, we need not address subsection 33–929(e).

Applying subsection 33–929(f)(2) to the following facts demonstrates that "the defendant could reasonably have anticipated being haled into court here by *some person who had been solicited* in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation." *Thomason,* 234 Conn. at 296, 661 A.2d 595. CCRS has a Hartford, Connecticut telephone number that has been listed in the Connecticut telephone book since 1984. The number is listed also on its letter head that the plaintiff had in his possession. CCRS advertises its services in regular publications to doctors employed at Connecticut hospitals and other medical facilities. Mr. Catuogno related that on at least one occasion he came to Connecticut to meet with AETNA representatives for the purpose of gaining insurance clients in Connecticut for CCRS and Sten–Tel, though his visit did not result in any agreement for services. To stimulate further business with insurance companies in this state, Mr. Catuogno hired an insurance specialist for that purpose in around 1999. In fact, CRSS'S solicitation in Connecticut has resulted in billable services from several prominent medical facilities, law firms and at least one insurance company in Connecticut. [Pl.'s Ex. 7].

At the time CCRS advertised its services in Connecticut through telephone listings, magazine publications and personal solicitation, it was foreseeable that at least one Connecticut business would re-

spond to the advertisement and hire CCRS to perform transcription services and, thereafter, sue in Connecticut for failure to provide properly such services, or for any other problems that might occur as a result of providing such services. The plaintiff's causes of action are similar to those of a solicited person because they result, in part, out such solicitation and any business gained therefrom. Stated differently, the plaintiff would have provided accounting services for CCRS directly related to the transcription services it provides to its customers here, as well as the advertisement of these services. Because the plaintiff's causes of action are similar to those that foreseeably could have resulted from CCRS's solicitation in Connecticut, the plaintiff has satisfied the "arising out of" test.

Having determined as such, we consider next whether CCRS has "repeatedly so solicited" business in Connecticut. CCRS has performed, and continues to perform, transcription services for a number of Connecticut businesses. The defendant's activities can be "characterized as affirmative measures designed to attract Connecticut customers in that they constitute the creation of an organizational network that is likely to prompt a significant number of Connecticut" medical and legal professionals, as well as insurance companies, to place business with CCRS. *Thomason,* 234 Conn. at 298, 661 A.2d 595. It is reasonably foreseeable that by advertising here, CRSS would develop customer relations with Connecticut businesses that would lead to its procurement of transcription business with those customers. Moreover, it is equally foreseeable that by performing transcription services for a number of prominent Connecticut businesses, it would lead to a continued business relationship with those entities, as well the development of new business based on reputation.

Consequently, Conn. Gen.Stat. § 33–929(f)(2) brings CCRS within the personal jurisdiction of this state. We examine next whether section 52–59b reaches Mr. Catuogno.

### 3. Jurisdiction as to Mr. Catuogno

■ Section 52–59b confers jurisdiction over nonresident individuals upon Connecticut courts, and this court, provided certain conditions are met. It provides in relevant part: "(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual ... who in person or through an agent: (1) Transacts any business within the state...." The Connecticut Supreme Court construes the term " 'transacts any business' to embrace a single purposeful business transaction." *Zartolas v. Nisenfeld,* 184 Conn. 471, 474, 475, 440 A.2d 179, 181 (1981) (citations omitted); *see also Pro Performance Corporate Services, Inc. v. Goldman,* 47 Conn.Supp. 476, 480 804 A.2d 248, 252 (2002) (holding that the term "transacts any business" in section 52–59b has broader meaning than "transacts business" in section 33–929). Moreover, "[w]hile a single purposeful business transaction might be sufficient to confer jurisdiction, courts do not apply a rigid formula but balance considerations of public policy, common sense, and the chronology and geography of the irrelevant factors." *Seatrade Compania v. Papaliolios,* CV92 0125736S, 1993 WL 7512, *1 (Jan. 11, 1993) (citing, *Gaudio v. Gaudio,* 23 Conn.App. 287, 298, 580 A.2d 1212 (1990)).

Because the plaintiff relies on the same jurisdictional theories to assert jurisdiction over Mr. Catuogno as he did to assert jurisdiction over CCRS and Sten–Tel, he has failed to allege facts necessary to satisfy the requirements of section 52–59b.

"[P]ersonal jurisdiction may not be asserted over [an officer] of a corporation based on [his] transaction of business in Connecticut where the [officer] did not transact any business other than through the corporation, as in the present case." *Adams v. Wex*, 56 F.Supp.2d 227, 229 (D.Conn.1999); *Hagar v. Zaidman*, 797 F.Supp. 132, 137 (D.Conn.1992); *Bross Utilities Service Corp. v. Aboubshait*, 489 F.Supp. 1366, 1373 (D.Conn.) *aff'd* 646 F.2d 559 (2d Cir. 1980); *Abrams v. Riding High Dude Ranch*, No. CV 970345046, 1997 WL 791491 (Conn.Super. Nov. 21, 1997); *Contra: Under Par Assocs. v. Wash Depot A., Inc.*, 47 Conn.Supp. 319, 793 A.2d 300 (2001) (holding that not subjecting corporate officers to jurisdiction in such cases has no support in language of statute); *see also* Sonja Larsen, annot., *Validity, construction, and application of "fiduciary shield" doctrine–modern cases*, 2000 WL 764141, 79 A.L.R. 5th 587 (2000).

Accordingly, in the absence of facts showing that Mr. Catuogno conducted any business other than through the businesses he controlled, he is not subject to personal jurisdiction under section 52–59b. Because we find that the plaintiff has failed to show by a preponderance of the evidence that Connecticut's longarm statutes reach Sten–Tel and Mr. Catuogno, our jurisdictional inquiry ends in that regard. Having determined, however, that Conn. Gen.Stat. § 33–929(f)(2) extends Connecticut's jurisdiction to the defendant CCRS, we turn now to whether asserting such jurisdiction offends constitutional principles of due process.

## B. Federal Due Process

■ The due process clause permits "in personam jurisdiction over a nonresident corporate defendant that has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Thomason*, 234 Conn. at 287, 661 A.2d 595 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Our jurisdictional analysis, therefore, is a two-step process: First, the court must determine if the defendant has minimum contacts with the forum. If minimum contacts are not established, the inquiry ends. *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996). If such contacts are established, we reach the second inquiry, which is whether asserting jurisdiction comports with traditional notions of fair play and substantial justice. *Edberg*, 17 F.Supp.2d at 111, 112. "Either 'specific' jurisdiction or 'general' jurisdiction can satisfy the constitutional requirement of sufficient minimum contacts between the defendant and the forum." *Thomason*, 234 Conn. at 287, 288, 661 A.2d 595. "Where the claim arises out of, or relates to, the defendant's contacts with the forum—i.e., specific jurisdiction—minimum contacts exist where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." *Bank Brussels Lambert*, 305 F.3d at 127 (quotation marks omitted, citations omitted). Further, "[w]hen a controversy is related to or arises out of a defendant's contacts with the forum ... a relationship among the defendant, the forum, and the litigation is the essential foundation of ... in personam jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). A state may assert "general jurisdiction—i.e., jurisdiction irrespective of whether the claim arises from or relates to the defendant's forum contacts—only where these contacts are continuous and systematic." *Bank Brussels Lambert*, 305

F.3d at 127 (quotation marks omitted, citations omitted). The minimum contacts inquiry "rests upon the totality of the circumstances rather than any mechanical criteria . . ." *Inset Sys.*, 937 F.Supp. at 165 (quotation marks omitted).

The following facts establish that CCRS's contacts with this state satisfy the minimum contacts component of the due process analysis. CCRS actively solicited business from insurance companies in Connecticut. For example, on behalf of CCRS, Mr. Catuogno traveled to Connecticut and personally solicited business from AETNA. Such solicitation continued through CCRS's agent, an insurance specialist, whose job was to procure business from insurance companies in Connecticut. Presently, at least one insurance company, The Hartford, does business with CCRS. CCRS's focus, however, has not been confined to insurance companies. It has solicited staff members of various medical facilities located in Connecticut through magazine publications received there. CCRS has provided services to several such facilities throughout the Hartford, Connecticut area. CCRS solicits business also from many law firms within this state; it does business for many of them as well. "On a very occasional basis," CCRS has sent one of its court reporters into Connecticut to provide services to law firms located here. (Def.'s Aff. Ex. A. at 1). Furthermore, CCRS has maintained a Hartford telephone number listing for the convenience of Connecticut businesses since 1984, and rented office space here to accommodate its clients.[7]

Though CCRS hired the plaintiff when he resided in Massachusetts, he has lived in Connecticut since 1989. CCRS, therefore, knowingly employed a resident of this state for over a decade. Mr. Catuogno admits to having telephoned the plaintiff at his home in Connecticut to discuss business, but claims that such conversations were rare and not of an appreciable nature; he engaged in such conduct nevertheless. Finally, Mr. Catuogno fired the plaintiff from his employ with the defendants by letter sent to his home here.

The plaintiff argues that the defendant's interactions with Connecticut residents and businesses should subject it to general jurisdiction in this case. CCRS's contacts, however, have not been of the "continuous and systematic" nature necessary to confer such broad jurisdiction. See *Helicopteros*, 466 U.S. at 414, 415, 104 S.Ct. 1868 (citing *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). However, "[w]here, as here, the claim arises out of, or relates to, the defendant's contacts with the forum, i.e., [use of a Connecticut resident to perform accounting services regarding business done within this state], the defendant need only prove "limited" or "specific" jurisdiction." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 152 (2d Cir.2001). "While these contacts may not have directly given rise to the plaintiff's cause of action, they certainly relate to it." *Bank Brussels Lambert*, 305 F.3d at 128. As an accountant for the defendants, the plaintiff would have been involved with most, if not all, of the financial aspects of the defendant's business as it related to Connecticut.

The defendant's contacts with Connecticut "are not the kind of random, fortuitous, or attenuated contacts or unilateral activity of another party or a third person that the purposeful availment requirement is designed to eliminate as a basis for juris-

---

7. The parties dispute the length of time that CCRS rented office space in Connecticut. The defendants claim it was for only 18 months, while the plaintiff asserts it was for several years. We will assume it was for the lesser time of 18 months.

diction." *Bank Brussels Lambert*, 305 F.3d at 127 (quotation marks omitted) (citing *Burger King Corp., v. Rudzewicz*, 471 U.S. 462, 471, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The defendant has intentionally targeted the legal and medical professions, which comprise of vast network of professionals, as well as the insurance industry, to cultivate a market for reporting services within this state. *See Bank Brussels Lambert*, 305 F.3d at 127. CCRS has taken advantage of that vast network so that lawyers, doctors and insurance companies that have used or continue to use CRSS's services will refer or recommend it to other lawyers, doctors and insurance companies. Consequently, we see nothing unfair about requiring CCRS to defend itself when a dispute arises from or relates to its business contacts within Connecticut.

■ Based on the totality of the circumstances, CCRS has purposely availed itself of the rights and privileges of this state by soliciting and conducting business here, and through its volitional use of a Connecticut accountant. Further, the defendant's activities here demonstrate a relationship among the defendant, the forum, and the litigation. *See Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868. Having concluded that the necessary minimum contacts exist between the defendant and Connecticut, we proceed to our next inquiry.

The second part of the jurisdictional analysis asks whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice"—that is, whether it is reasonable under the circumstances of the particular case. Courts are to consider five factors in evaluating reasonableness: (1) the burden that the exercise of jurisdiction will impose on the defendant, (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient

and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. Where a plaintiff makes the threshold showing of the minimum contacts required for the first test, a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. The import of the "reasonableness" inquiry varies inversely with the strength of the "minimum contacts" showing-a strong (or weak) showing by the plaintiff on "minimum contacts" reduces (or increases) the weight given to 'reasonableness.'

*See Bank Brussels Lambert*, 305 F.3d at 129 (Citations omitted, quotation marks omitted).

We consider now each reasonableness factor separately.

### 1. Burden on the Defendant.

The defendant claims that defending a lawsuit here would result in "unwarranted expense and inconvenience" and that it is "patently unfair to require [him] and [CCRS] to respond to litigation in a foreign state where no appreciable business was conducted." Def.'s Aff. at 2. The defendant supports his argument by stating that both the law firm he does business with and his office are located two blocks from the federal court house in Springfield. We recognize that it would be much more convenient for the defendant to litigate this matter in Springfield, but that does not compel a finding that it is unreasonable for this court assert its jurisdiction. It is always inconvenient and a burden for any party to defendant a lawsuit. Such a burden, however, is not exacerbated by the fact that a more convenient location exists for the defendant. This

Court is approximately 90 miles from Ludlow, Massachusetts, where Mr. Catuogno resides, and approximately 55 miles from Springfield, Massachusetts, where CCRS is located. A maximum two-hour drive for the defendant does not create the sort of burden that would lead us think otherwise about asserting our jurisdiction. *See Robertson–Ceco Corp.,* 84 F.3d at 573, 574. Consequently, this factor does not weigh in the defendant's favor.

### 2. Interests of Forum State

Connecticut has a "manifest interest in providing effective means of redress for its residents." *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.,* 104 F.Supp.2d 279, 283 (S.D.N.Y.2000). This factor, therefore, weighs strongly in the plaintiff's favor.

### 3. Interests of Plaintiff in Obtaining Convenient and Effective Relief

Litigating in this state would be obviously more convenient for the plaintiff. "The plaintiff's choice of forum is the best indicator of his own convenience." *Scott v. Jones,* 984 F.Supp. 37, 46 (D.Maine 1997). This factor, as well, supports the plaintiff.

### 4. Efficient Administration of Justice

"In evaluating this factor, courts generally consider where witnesses and evidence are likely to be located." *Robertson–Ceco Corp.,* 84 F.3d at 575. Because CCRS is a Massachusetts corporation, a significant amount of evidence is likely to be located there. Further, Mr. Catuogno and other witnesses likely to be a part of this litigation are located in Massachusetts. On the other hand, the plaintiff would be a witness in this action, and he, presumably, is in possession of evidence. Because more witnesses and evidence are likely to come from Massachusetts, this factor weighs slightly in favor of the defendant.

### 5. Policy Arguments

"This factor requires us to consider the common interests of the several states in promoting substantive social policies." *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 245 (2d Cir.1999). The plaintiff and the defendant have not offered this Court any indication, and we can find none, that this factor cuts in favor of either party.

Our consideration of the reasonableness factors shows that they weigh more in favor of asserting jurisdiction over the defendant. The facts of this case simply do not present the sort of "exceptional situation envisaged by the Court in *Burger King,*" whereby asserting jurisdiction would be unreasonable. *Robertson–Ceco Corp.,* 84 F.3d 560, 575; *See also Burger King Corp.,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528. The defendant has failed to make a "compelling" case that this Court's exercise of jurisdiction over it would be unreasonable under the circumstances. Consequently, the constitutional principles of due process are not offended by asserting jurisdiction over CCRS.

## III. CONCLUSION

Because CCRS's activities bring it within the personal jurisdictional reach of Connecticut's long-arm statute, and the exercise of this jurisdiction is consistent with federal due process, CCRS is subject to suit in this Court. Consequently, the motion to dismiss CCRS for lack of personal jurisdiction [**Doc. 5**] is **DENIED**. Additionally, because Connecticut's long-arm statutes do not reach the defendants, Sten–Tel and Mr. Catuogno, their motion to dismiss for lack of personal jurisdiction [**Doc. 5**] is **GRANTED**.